## VAUGHAN NOVELTY MFG. CO. v. G. G. GREENE MFG. CORP.

### No. 10840.

United States Court of Appeals
Third Circuit.

Argued Dec. 18, 1952.

Decided Feb. 25, 1953.

Rehearing Denied March 23, 1953.

Warren C. Horton, Chicago, Ill. (Victor A. Peckham, Brown, Critchlow, Flick &

Peckham, Pittsburgh, Pa., Frederick C. Jonas, Chicago, Ill., on the brief), for plaintiff-appellant.

Judd N. Poffinberger, Jr., Pittsburgh, Pa. (William Glassman, Warren, Pa., J. U. Anderson, Jr. and Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., on the brief), for defendant-appellee.

Before BIGGS, Chief Judge, and GOODRICH and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This is an appeal from a denial of plaintiff's petition for an injunction, seeking to restrain defendant from making and selling a certain can opener, which acts are alleged to be violative of a consent decree entered in an earlier stage of this litigation.

Plaintiff started this action in April of 1949, charging defendant with patent and trade-mark infringement and unfair competition relating to a certain bottle-cap remover. The case did not go to trial, the parties agreeing to a consent judgment, which was entered by the district court on April 28, 1950. In August of 1951, plaintiff filed the present petition, alleging that defendant had violated the decree by its sale of a slavish imitation of plaintiff's can opener, thus deceiving prospective purchasers into regarding defendant's opener as plaintiff's.

Plaintiff makes and sells a can opener called the "Safety Roll Jr." Since the entry of the consent decree, defendant has made and sold, and threatens to continue to do so, a can opener which the district court found to be "substantially identical in design and dimensions to the 'Safety Roll Jr.' with the exception that the handle has hook-shaped openings at each end such as used in bottle openers whereas the 'Safety Roll Jr.' has closed ends with a circular hole near each end of the handle." D.C., W.D. Pa.1952, 105 F.Supp. 595, 596. Defendant's opener has stamped on the handle "G. G. Greene, Warren, Pa.," while plaintiff's opener has the following directions on its handle: "If Blade Sticks Wash in Hot Water" and has on its frame "Vaughan Safety Roll Jr. Trade Mark Can Opener." The district court held that all parts of plaintiff's opener were functional and, therefore, concluded that only Section 9 of the consent decree was relevant.[1] It held also that the phrase "special significance" as used in the decree was equivalent to "secondary meaning" as that phrase is used in unfair competition cases. The court found that plaintiff's evidence had established only that there was a considerable public demand for a can opener like plaintiff's and that there was no showing that the public purchased it because of its source. Consequently, the court concluded that plaintiff's opener had not acquired a special significance and, thus, that defendant had not violated the decree. Alternatively, it held that, even were it convinced that plaintiff's opener had acquired a special significance, plaintiff could not prevail because the steps taken by defendant to distinguish its opener from plaintiff's were reasonable and, therefore, legally sufficient. We think the district court's result was correct.

1. The pertinent sections of the decree are as follows:

"8. Defendant shall not manufacture, offer for sale, or sell products copying or imitating such of the nonfunctional features of products manufactured by plaintiff as have acquired generally a special significance identifying plaintiff's products, where the copy or imitation is likely to cause prospective purchasers to regard defendant's products as those of plaintiff.

"9. Defendant has the right to manufacture, offer for sale, and sell products which copy and imitate the functional features of products manufactured by plaintiff, provided that such functional features are not protected by currently effective Letters Patent, and provided further that, where the copied or imitated functional features of plaintiff's products have acquired generally a special significance identifying plaintiff's products, and the copying or imitating of such functional features by defendant is likely to cause prospective purchasers to regard defendant's products as plaintiff's products, defendant must take reasonable steps to prevent confusion."

The decree shows that, while the bottle-cap remover was the only item specifically mentioned, the parties did intend to establish rules for all of their competing products.

174

■ In the consent decree, the parties wrote their own private code of unfair competition. Our first task is to discover the meaning of Sections 8 and 9 of that private code,[2] which sections are the only ones relevant to this proceeding. On this question, we agree with the finding of the district court that the terms used in the decree were intended to be given a meaning consonant with that given them in unfair competition cases. Indeed, a reading of Section 741 of the Restatement of the Law of Torts indicates that, in drafting the decree the parties may have used that section as a formbook.[3] In short, we think that Sections 8 and 9 of the decree are no more than a concise statement of that phase of the law of unfair competition relating to confusion of source by the imitation of the physical appearance of another's goods.[4]

By Sections 8 and 9 of the decree, plaintiff got no more than defendant's agreement to do what it was already bound to do under the law. Plaintiff tells us that this construction rewrites the decree which, of course, we may not do. Plaintiff says that the phrase "secondary meaning" was deliberately rejected and "special significance" was chosen because the parties sell, not to the general public, but to jobbers, distributors, and chain organizations. We fail to see why the principle of secondary meaning would not apply equally well to sales to both of those groups. In any event, we think that special significance has the same content as does secondary meaning.[5] Plaintiff has not pointed out, nor have we found, any judicial assertion to the contrary. Consequently, this is an ordinary unfair competition case.[6]

2. See note 1, supra.

3. "Elements of Unprivileged Imitation.

"One who markets goods, the physical appearance of which is a copy or imitation of the physical appearance of the goods of which another is the initial distributor, markets them with an unprivileged imitation, under the rule stated in § 711, if his goods are of the same class as those of the other and are sold in a market in which the other's interest is protected, and

"* * *

"(b) the copied or imitated feature has acquired generally in the market a special significance identifying the other's goods, and

"(i) the copy or imitation is likely to cause prospective purchasers to regard his goods as those of the other, and

"(ii) the copied or imitated feature is nonfunctional, or, if it is functional, he does not take reasonable steps to inform prospective purchasers that the goods which he markets are not those of the other." Restatement, Torts, § 741 (1938).

4. Restatement, Torts, §§ 711(c) and 741 (1938). See also 1 Nims, Unfair Competition and Trade-marks, Ch. IV, Secondary Meaning, and Ch. X, Simulation of Articles Themselves (1947).

5. " 'Secondary meaning.' The special significance of a designation described in Clause (b) of this Section and in comment a is customarily referred to as the 'secondary meaning' of the designation.

* * *" Restatement, Torts, § 716, comment b (1938).

The discussion in § 716 deals with secondary meaning as originally developed, that is, in the protection of trade names. The principle, however, is equally applicable to the protection of the physical appearance of one's goods which, as is the case of a trade name, has come to identify the source of the goods in the minds of a substantial part of the purchasing public. Restatement, Torts, § 741, comment h (1938).

"The cases of so-called 'nonfunctional' unfair competition * * * are only instances of the doctrine of 'secondary' meaning. All of them presuppose that the appearance of the article, like its descriptive title in true cases of 'secondary' meaning, has become associated in the public mind with the first comer as manufacturer or source, and, if a second comer imitates the article exactly, that the public will believe his goods have come from the first, and will buy, in part, at least, because of that deception." Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299, 300.

6. Although there is both federal-question and diversity jurisdiction here, the Supreme Court has told us often enough that the tort of unfair competition is to be determined by local law. Pecheur Lozenge Co. v. National Candy Co., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 113 n. 1, 59 S.Ct. 109, 83

After applying the customary test,[7] the district court concluded that plaintiff had failed to establish that its opener had acquired a special significance identifying it as plaintiff's product. Naturally, plaintiff attacks that conclusion, and we concede that it is a close question. In our view of the case, however, we need not take a stand on the mattter. We will assume that the shape and size of plaintiff's opener had acquired a special significance.

The district court found that the two openers were substantially identical, and a mere glance confirms that conclusion. But no express finding was made as to whether the degree of similarity was such as would be, in the words of the decree, "likely to cause prospective purchasers to regard defendant's products as plaintiff's products * * *." We think, however, that a finding of substantial identity sufficiently indicates the district court's view that there was confusing similarity. Had the court felt that there was not such similarity, the matter would have ended there. Its subsequent conclusions that the imitated features were functional and that defendant had taken reasonable steps to avoid confusion are meaningful only upon the assumption that the products were confusingly similar.

The district court further concluded that all parts of plaintiff's opener were functional. It must be borne in mind that the word "functional" in these imitation cases does not mean merely utilitarian. It is much broader.[8] However that may be, plaintiff does not question the conclusion that all parts of its opener are functional.[9] Indeed, the arguments in both its main and reply brief are based on the assumption that the copied features of its opener are functional. Consequently, we shall so treat them here.[10]

L.Ed. 73. See also Fashion Originators' Guild of America, Inc. v. FTC, 1941, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949. Therefore, the law of Pennsylvania is controlling since the alleged unfair acts were committed there. Both parties rely almost entirely on federal precedents, but there is no claim or indication that Pennsylvania differs from the federal law. Gum v. Gumakers of America, 3 Cir., 1943, 136 F.2d 957, 960–961.

7. Restatement, Torts, § 741, comment h (1938).

8. Restatement, Torts, § 742 (1938).

9. The following is plaintiff's statement of the questions involved:

"1. Has Plaintiff's can opener, Exhibit 3, acquired a special significance in its appearance and parts, identifying the product as Plaintiff's?

"2. Is not Defendant's can opener, Exhibit 2, such an exact copy of Plaintiff's Exhibit 3 as to be likely to cause confusion?

"3. Has Defendant taken reasonable steps to prevent confusion between the two products?

"4. Is not Defendant's continued manufacture and sale of the can opener, Exhibit 2, since April 28, 1950 a violation of the Consent Judgment entered on that date?"

10. There is nothing startling about saying that shape, size, or even color are functional. Restatement, Torts, § 742, comment a (1938). The following cases are indicative of the range of functionality. Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 122, 59 S.Ct. 109, 83 L.Ed. 73, (the pillow-like shape of a shredded wheat biscuit); Smith, Kline & French Laboratories v. Clark & Clark, 3 Cir., 157 F.2d 725, certiorari denied, 1946, 329 U.S. 796, 67 S.Ct. 482, 91 L.Ed. 681 (scoring on pills to make breaking easier; concave bottom, beveled edges, and the white color of pills); James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 128 F.2d 6, certiorari denied, 1942, 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541 (shape, size, and color of artificial fishing lures); J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 1941, 120 F.2d 949 (design of pockets in workmen's overalls); Pope Automatic Merchandising Co. v. McCrum-Howell Co., 7 Cir., 1911, 191 F. 979, 40 L.R.A.,N.S., 463, certiorari denied, 1912, 223 U.S. 730, 32 S.Ct. 527, 56 L.Ed. 633 (tacit holding that form and natural aluminum color of an electric vacuum cleaner were functional); Diamond Match Co. v. Saginaw Match Co., 6 Cir., 142 F. 727, certiorari denied, 1906, 203 U.S. 589, 27 S.Ct. 776, 51 L.Ed. 330 (two-tone, red and blue head of a sulphur match). See also the exhaustive collection of cases in 3 Callman, Unfair Competition and Trade-marks, § 77.4(e) (1) n.97 (2d Ed. 1950).

In several isolated sentences in its brief, plaintiff does argue that there are many different shapes and sizes which

■ The defendant's Chinese copy is a result of its imitation of all the functional features of plaintiff's opener. This is not enough, however, to require defendant to stop making and selling its imitation. The consuming public has an interest in making use of the functional features of plaintiff's opener, superior to plaintiff's interest in being their sole vendor. Since the items copied are functional, defendant has as much right to use them as does plaintiff, even though plaintiff may have been their originator. All that plaintiff may justly demand is that defendant take reasonable steps to prevent buyers of defendant's opener from thinking they have bought plaintiff's.[11]

■ Defendant has inscribed on the handle of its opener "G. G. Greene, Warren, Pa." The size of the lettering is at least as large as the inscription on plaintiff's opener. "In the light of plaintiff's indication by its own practice that the manner in which its name is printed upon the Blony wrapper is sufficient to inform the public of the origin of its product, we cannot hold that the substantially similar way in which the defendant prints its name upon the wrappers of its product is insufficient for the same purpose." Gum v. Gumakers of America, 3 Cir., 1943, 136 F.2d 957, 960. Labeling is often the only reasonable step to take to avoid confusion.[12] To require

more is to say in the same breath that defendant may copy because the feature is functional, yet, in order to avoid confusing the source, he may not copy. In design and size the two openers are very much alike but as to the inscriptions thereon they are very different. They are similar where similarity is allowed and different where difference is required. That is enough.

Defendant's only witness, one Hutley, a tool and die designer for defendant, testified that after the entry of the consent decree he made three new handles, but that these proposed changes were rejected because they used too much stock, were two expensive, did not have eye appeal, or had a tendency to catch on the finger as it was turned in opening a can. We think that these proposed changes, and the reasons for their rejection,[13] substantiate our conclusion that labeling is the only reasonable way to indicate source here.

But, says plaintiff, the labeling had been done before the decree, and, thus, defendant took no steps whatsoever to indicate source after the decree. The argument is that by the decree defendant was bound to take additional steps, thereafter, to prevent confusion, but that defendant has done nothing that was not part of its former practice. We are told that to allow this makes the decree worthless. If our conclusion is correct, however, that the decree

---

defendant could use and still produce a workable can opener. This is true, but the same could be said of the pillow-shaped shredded wheat biscuit, the rounded overall pockets, and the two-tone match head in the cases cited above.

11. *"Reasonable steps to apprise purchasers.* If an imitated feature is functional but has also acquired generally in the market a special significance as an indication of the source of the goods, the imitation is privileged if it is accompanied by reasonable effort to avoid deceiving prospective purchasers as to the source. This may frequently be done by prominent disclosure of the true source. At other times, additional notice may be necessary. What steps are reasonable depends upon the circumstances of each case. If they cannot be taken as a practical matter in a particular case, they are not reasonable in that case. If they are not calculated to avoid deception of cus-

tomers, or if they would involve a financial expenditure which would substantially hinder competition in the sale of the goods, they are not reasonable. And if there are no reasonable steps to be taken in a particular case, the feature may be imitated despite its special significance.

"If the imitated feature is non-functional, then the imitation is unprivileged if, in fact, it is likely to deceive purchasers. Only steps which will effectively avoid this likelihood of deception can render the imitation of such a feature privileged." Restatement, Torts, § 741, comment *j* (1938).

12. Smith, Kline & French Laboratories v. Clark & Clark, 3 Cir., 157 F.2d 725, 731, certiorari denied, 1946, 329 U.S. 796, 67 S.Ct. 482, 91 L.Ed. 681; J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 1941, 120 F.2d 949.

13. See note 11, supra.

is merely a restatement of the common law rules covering imitation of another's goods, the result is that defendant's opener, as it was before the decree, did not constitute an actionable imitation of plaintiff's opener, and, thus, was not such an imitation after the decree.

For the reasons stated, the judgment of the district court will be affirmed.