**FAMOLARE, INC., Plaintiff,**

**v.**

**MELVILLE CORP., Thom McAn Shoe Company, Inc., Pearlridge Thom McAn, Inc., Ala Moana Thom McAn, Inc., Fort St.-Honolulu Thom McAn, Inc., Waialae Thom McAn, Inc., Kamehameha Thom McAn, Inc., John Does One through Four, Defendants.**

**No. C–77–0525–WWS.**

United States District Court,
D. Hawaii.

June 14, 1979.

---

Vernon F. L. Char, Damon, Shigekane, Key & Char, Honolulu, Hawaii, Charles E. Townsend, Jr., Thomas F. Smegal, Jr., Roger L. Cook, John W. Schlicher, Townsend & Townsend, San Francisco, Cal., for plaintiff.

Harold M. Fong, Hiram L. Fong, Jr., Kenneth G. K. Hoo, Fong, Miho & Robinson, Honolulu, Hawaii, Gerald D. Hosier, Raymond P. Niro, Thomas G. Scavone, Hosier, Niro & Daleiden, Ltd., Chicago, Ill., George W. Whitney, Joseph D. Garon, Brumbaugh, Graves, Donohue & Raymond, New York City, for defendants.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

SCHWARZER, District Judge.

Plaintiff Famolare has sued defendants for patent infringement, trademark infringement, and unfair competition. Defendants have moved for summary judgment.

Plaintiff manufactures and markets shoes in Hawaii and other states. The shoes have contoured soles consisting of multiple crests with troughs in the bottom of the soles. There are two basic styles of these wavy-bottom shoes. The trade name "GET THERE" shoes have a low heel and four waves on the sole. The trade names "HI THERE" and "HI UP" shoes (plaintiff claims that these shoes are virtually identical) have a high wedge and three waves on the sole. Joseph Famolare, founder of Famolare, Inc., conceived the design for the wavy-bottom soles in 1973. All of plaintiff's shoes contain the "Famolare" label and trademark (a bicycle) on their insoles, as well as one of the above names.

It is undisputed that subsequent to the appearance on the market of plaintiff's shoes, defendants began marketing in Hawaii and elsewhere a line of shoes, known primarily as "Rollerskates," featuring a wavy-bottom sole similar or identical in appearance to the Famolare sole. Defendants' shoes have other external features which resemble plaintiff's (e. g., similar appearing uppers and identical colors). Plaintiff admits, however, that the insoles of defendants' shoes contain the "Thom McAn" label, and that their shoes do have certain structural differences. For example, Famolare shoes have natural leather uppers and linings whereas Thom McAn shoes, according to the affidavit of Leo Famolare, have uppers constructed of man-made material. Similarly, Famolare shoes contain wooden heel inserts, but Thom McAn shoes do not, and the bottoms of the soles have different designs.

Plaintiff's amended complaint of March 31, 1978, alleges that defendants have infringed three of its patents: U.S. (utility) Patent No. 3,936,956 (on the four-wave "GET THERE" sole); U.S. Design Patent No. 235,701 (also on the "GET THERE"); and U.S. Design Patent No. 235,819 (on the three-wave "HI THERE" and/or "HI UP"). The complaint also alleges that defendants have violated the statutory and common law of unfair competition and trademark infringement in Hawaii by their acts of copying and marketing shoes with wavy-bottom soles that are identical in appearance to those of plaintiff.

On March 30, 1979, the United States District Court for the Northern District of Illinois held invalid utility patent No. 3,936,956 and design patent No. 235,701, plaintiff's patents on the "GET THERE" sole. *Famolare, Inc., v. Edison Brothers, Inc.* (No. 75–C–2708). The court stated (slip op. at 56–57):

> We conclude as to validity that both patents are invalid for the reasons heretofore stated. The design patent lacks invention and it would have been obvious to any designer of ordinary skill to design soles with three, four, five or more waves. The utility patent involves a structure which functions very well but apparently not significantly better than a number of other soles. In addition, the claims are not sufficiently definite to meet the requirements of 35 U.S.C. § 112 in that they fail to inform either the specific structure or the limits of the claimed invention.

The court also granted Famolare's motion to dismiss with prejudice the trademark infringement and unfair competition claims it had brought against Edison Brothers Stores and USM Corporation. The court did not address the validity of design patent No. 235,819.

### I. *Plaintiff's Claims of Patent Infringement*

■ *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), held that a plaintiff is estopped from asserting the validity of a patent that has been declared invalid in a prior suit against a different defendant unless he did not have a full and fair opportunity to litigate the validity of his patent in the prior suit. Plaintiff admits that it had a full and fair opportunity to litigate the validity of the two patents which were declared invalid by Judge Will of the Northern District of Illinois, and that under the *Blonder-Tongue* doctrine it is now estopped from asserting the validity of these patents in another district court. To preserve the rights of the parties in the event of a reversal of the Illinois District Court's judgment by the

Seventh Circuit Court of Appeals, the action in this Court is stayed as to all issues regarding the validity, enforceability, and infringement of patents No. 3,936,956 and 235,701 until a judgment on these issues has become final and appeal rights have been exhausted.

■ The District Court for the Northern District of Illinois presently has before it, in *USM Corp. v. Famolare, Inc.* (No. 78–C–2840), a motion for summary judgment on the validity of plaintiff's design patent No. 235,819, the third patent which plaintiff seeks to enforce in this Court. Inasmuch as Judge Will has previously ruled that plaintiff's other two patents are invalid and has considered many of the issues which may also be dispositive of the issue of the validity of the No. 235,819 patent, it would be inappropriate for this Court to consider the validity of this patent while the motion is pending in Chicago. Accordingly, the action in this Court is stayed as to all issues regarding the validity, enforceability, and infringement of patent No. 235,819 until the Northern District of Illinois has rendered its decision.

### II. *Plaintiff's Claims of Trademark Infringement and Unfair Competition*

Prior to the submission of a supplemental memorandum in opposition to defendants' motion for summary judgment, plaintiff had not described the precise nature of its claims against defendants for trademark infringement and unfair competition. It now admits that under *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 232–33, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 238–39, 83 S.Ct. 1868, 10 L.Ed.2d 1050 (1964), there is no right of recovery for the mere copying of its shoes. Plaintiff argues primarily that the distinctive, wavy-bottom visual appearance of both its "GET THERE" and "HI THERE/HI UP" soles are trademarks for shoes sold by Famolare, and that defendants have committed trademark infringement by incorporating those features into their shoes in a manner which has caused or is likely to cause confusion

among prospective purchasers as to the source of the shoes. Plaintiff also alleges that defendants have violated the broader law of unfair competition by palming off their shoes as those of plaintiff, by intentionally enabling retail dealers to defraud customers by palming off their shoes as plaintiff's, and by misappropriating the business value of plaintiff's labor in designing its unique shoes.

## A. Trademark Infringement

Both parties agree that federal and state claims for trademark infringement are based on two elements: (1) a protectible property interest in the mark held by the plaintiff; and (2) the defendant's use of the trademark on goods in a manner that creates a likelihood of confusion among prospective customers as to the source of the goods. See Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1014 (5th Cir.), cert. denied, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975); HMH Publishing Co. v. Brincat, 504 F.2d 713, 716–19 (9th Cir. 1974); Golden Door, Inc. v. Odisho, 437 F.Supp. 956, 962–63 (N.D.Cal.1977); Schwinn Bicycle Co. v. Murray Ohio Manufacturing Co., 339 F.Supp. 973, 979 (M.D. Tenn.1971), aff'd, 470 F.2d 975 (6th Cir. 1972).[1] The parties also agree that a functional feature or article cannot serve as a trademark. Pachmayr Gun Works, Inc. v. Olin Mathieson Chemical Corp., 502 F.2d 802, 807 (9th Cir. 1974); Bliss v. Gotham Industries, Inc., 316 F.2d 848, 855 (9th Cir.

1963). The parties have raised a question, however, with respect to whether the functionality of the soles of plaintiff's shoes can be determined by the Court on this motion for summary judgment.

Plaintiff argues that a feature of a product is functional if it serves a useful, practical purpose, and that the appearance of a feature is non-functional. It contends that Joseph Famolare designed the wavy-bottom soles because he was interested primarily in a "look" which would appeal to customers. Any utilitarian aspects of the soles (e. g., comfort, improvement of muscle tone), according to plaintiff, are purely secondary and fall within the rule that where a feature of construction is in its concept arbitrary, trademark protection is not lost merely because the feature also serves a useful purpose. See Truck Equipment Service Co. v. Fruehauf Corp., 536 F.2d 1210, 1218 (8th Cir. 1976); Pachmayr Gun Works, Inc. v. Olin Mathieson Chemical Corp., supra, 502 F.2d at 807 ("an essentially functional feature of a product cannot be the subject of a valid trademark").

Defendants argue that plaintiff's prior representation that the soles are functional estops it from contending now that they are non-functional. Defendants cite plaintiff's advertising which emphasizes the functional features of the shoes; its representation of functionality to the United States Patent Office; and Joseph Famolare's deposition testimony, given in other proceedings, which discusses the practical benefits of the wavy-bottom soles.[2]

---

[1] Because "[r]egistration under the Lanham Act merely confers jurisdiction upon the federal district courts to hear and decide an action for infringement of a registered trademark and does not enlarge the trademark owner's substantive rights," Schwinn Bicycle Co. v. Murray Ohio Manufacturing Co., supra, 339 F.Supp. at 979, it is unnecessary for the purposes of this motion to rule on plaintiff's motion to amend its complaint by adding a Lanham Act claim.

[2] Defendants quote Mr. Famolare's testimony in Famolare, Inc. v. Edison Brothers Stores, Inc.:

Q Did the idea for the Get There sole just come to you on the airplane trip? Tell me a little more about how this whole idea was formulated?

A My attitude was that I had to eliminate the shock to the foot, and I decided because the shock is normally in any kind of walking in a normal shoe, that I should break the shock into four. Then I started to think about how could I do that, and I thought about rolling waves. Therefore, that is how I began to get into that idea.
Q How many waves do you need to break the shock?
A I thought the four wave sole was the best one. (Deposition of Joseph P. Famolare, Jr., June 18, 1976 at 305, 306, emphasis added). In that case, the court concluded (p. 42):

It is clear from the record that, as the four wave "Get There" sole became more widely worn, Famolare discovered that he had devel-

Even assuming plaintiff is not bound by its prior admissions of functionality and the Court accepted its argument that Mr. Famolare designed the wavy-bottom shoes for their marketable appearance, and not for their utility, trademark protection could not, as a matter of law, be given to plaintiff. As discussed in *Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir. 1952) (footnotes omitted), the definition of the term "functional" is broader than that suggested by plaintiff:

> "Functional" in this sense might be said to connote other than a trademark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden . . . . Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

This definition and reasoning have been cited with approval in subsequent Ninth Circuit decisions as well as in decisions of other courts. *E.g., Bliss v. Gotham Industries, Inc., supra*, 316 F.2d at 855; *Truck*

*Equipment Service Co. v. Fruehauf Corp., supra*, 536 F.2d at 1217; *PPS, Inc., v. Jewelry Sales Representatives, Inc.*, 392 F.Supp. 375, 384 (S.D.N.Y.1975).[3]

Thus, a feature of an article is functional, not necessarily because it is utilitarian and absolutely required for the use of the article, but rather because it is "an important ingredient in the commercial success of the product." *Pagliero v. Wallace China Co., supra*, 198 F.2d at 341. A feature which gives the consumer a substantial reason for purchasing the product, as opposed merely to distinguishing it from other products, is functional. By contrast, if a feature serves primarily to identify a product and does not contribute substantially to the product's value, as determined by consumers, it is non-functional and may not be copied. *See PPS, Inc. v. Jewelry Sales Representatives, Inc., supra*, 392 F.Supp. at 384; *Developments in the Law: Trade-Marks and Unfair Competition*, 68 Harv.L.Rev. 814, 856 (1955).

This distinction is based upon the interest in promoting free competition, which is a central objective of trademark infringement law. *See HMH Publishing Co. v. Brincat, supra*, 504 F.2d at 716. Free competition would be impeded if a manufacturer could gain a perpetual monopoly on the reproduction of a feature which contributes directly to the sale of the underlying product. But if a feature does no more

oped a comfortable as well as a commercially attractive sole design. It is also clear that the original design was dictated by stylistic not anatomical considerations although, as Mr. Famolare testified, a designer necessarily has to be concerned that his resulting product will be functional and he ultimately selected the four wave sole to be presented first because he believed it to be not only the most aesthetic but functional as well.

**3.** See also *J. C. Penny Co. v. H. D. Lee Mercantile Co.*, 120 F.2d 949, 954 (8th Cir. 1941):

> But the term "functional" is not to be treated as synonymous with the literal signification of the term "utilitarian." A design, for example, may not be utilitarian in a technical sense, but it may nevertheless be functional in the sense that it will contribute materially to a general sale of the goods.

The line is one that is not always easy of demarcation. If the design merely serves as a badge or identifying mark in the public mind of the source of the goods, it necessarily will be regarded as non-functional. . . If, however, the public believes generally that a certain feature adds a utilitarian value to the goods—whether it actually does or not—and will be materially influenced to purchase them on that basis, over other competitive goods in the market, it will be held to be functional.

Other courts have applied a strictly utilitarian view of functionality, stating that functionality means only features of goods which contribute objectively to their use, efficiency, or purpose. For a discussion of utilitarian concepts of functionality, see *Zippo Manufacturing Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670, 691–95 (S.D. N.Y.1963).

than identify the source of a product, competition would not be advanced by allowing its reproduction, for the most likely result will simply be the dilution of the goodwill of the originator.

■ If the feature is intended to appeal to the consumer's aesthetic values and is purchased for this reason, it is functional. In holding that designs on hotel china were functional, *Pagliero v. Wallace China Co., supra,* 198 F.2d at 343–44, discussed a factual situation similar to the present case:

Affidavits introduced by [plaintiff] Wallace repeat over and over again that one of the essential selling features of hotel china, if, indeed, not the primary, is the design. The attractiveness and eye-appeal of the design sells the china. Moreover, from the standpoint of the purchaser china satisfies a demand for the aesthetic as well as for the utilitarian, and the design on china is, at least in part, the response to such demand. The granting of relief in this type of situation would render Wallace immune from the most direct and effective competition with regard to these lines of china. It seems clear that these designs are not merely indicia of source, so that one who copies them can have no real purpose other than to trade on his competitor's reputation. On the contrary, to imitate is to compete in this type of situation. Of course, [defendant] Tepco can also compete by developing designs even more aesthetically satisfying, but the possibility that an alternative product might be developed has never been considered a barrier to permitting imitation competition in other types of cases. The law encourages competition not only in creativeness but in economy of manufacture and distribution as well.

The *Restatement of Torts* § 742, Comment a (1938), also discusses the functionality of a feature appealing to aesthetic values:

When goods are bought largely for their aesthetic value, their features may be functional because they definitely contribute to that value and thus aid the performance of an object for which the goods are intended. Thus, the shape of a bottle or other container may be functional though a different bottle or container may hold the goods equally well. A candy box in the shape of a heart may be functional, because of its significance as a gift to a beloved one, while a box of a different shape or the form in which a ribbon is tied around the box may not be functional. Or a distinctive printing type face may be functional though the print from a different type may be read equally well. The determination of whether or not such features are functional depends upon the question of fact whether prohibition of imitation by others will deprive the others of something which will substantially hinder them in competition.[4]

■ The record before the Court establishes beyond any dispute that the features of plaintiff's shoes are not mere indicia of source but substantially contribute to their commercial success. Plaintiff concedes that members of the public purchase Famolare shoes because the distinctive appearance of the wavy-bottom soles appeals to them. Plaintiff has also admitted that other types of wavy-bottom shoes not based on its design have been "a total flop in the marketplace." The copying of the Famolare three-wave and four-wave soles is therefore an important element in promoting competition. Under *Pagliero,* defendants need not show that no alternative design could be developed. The Court therefore concludes, as a matter of law, that the relevant features of the Famolare soles are functional within the meaning of the authorities and are not entitled to trademark protection.

■ The fact that the wavy soles may also serve as indicia of source, i. e., that they identify the designer, Famolare, does not aid plaintiff here. The rule that functional features are not entitled to trademark protection must necessarily apply

---

4. The *Restatement (Second) of Torts* (1977) does not contain a chapter on unfair competition and trade regulation.

even if those features may in addition identify the source of the product. A different result would eviscerate that rule and frustrate its purpose of encouraging competition. Thus, Famolare's wavy-bottom soles must be distinguished from features found to have no function other than to identify the product. See, for example, *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc., supra*, 510 F.2d at 1013 (embroidered symbols held valuable only because they were the trademarks of plaintiff's hockey teams, not because they possessed any aesthetic qualities), and *Rolls-Royce Motors Ltd. v. A & A Fiberglass, Inc.*, 428 F.Supp. 689, 693 (N.D.Ga.1977), (Rolls-Royce's grill and hood statuette held valuable only because they identified a prestigious source, not because they were motivating factors in the purchase of a $50,000 automobile).

## B. *Palming Off*

Plaintiff admits that palming off does not consist merely of copying. The key element of palming off is the defendant's marketing his product as that of another. "[W]hile a manufacturer can imitate a product, he cannot market it in a way which he knows will induce purchasers to buy it thinking that it is the product of another." *K–S–H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 54, 59 (9th Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 69, 24 L.Ed.2d 76 (1969). "Unfair competition goes to the question of marketing, not to the question of manufacture. One may be perfectly within his legal rights in producing an item and yet well without them in his method of selling it if he markets his own item in such a way that there is likely confusion as to source of manufacture." *B. H. Bunn Co. v. AAA Replacement Part Co.*, 451 F.2d 1254, 1263 (5th Cir. 1971).

Plaintiff's allegations do not raise a triable issue whether defendants have palmed off their shoes as those of plaintiff.

Plaintiff contends that on three separate occasions during 1977 and 1978, defendant Thom McAn received purchase orders from W.F. Beall Corporation of Shreveport, Louisiana, for "GET THERE" shoes, and that in each instance defendant sold Beall Thom McAn look-alike shoes without notifying Beall that they were not "GET THERE" shoes. But this allegation does not raise an inference that defendant marketed its products as those of another or that any retailer even thought it was buying Famolare shoes from Thom McAn. It shows only that Beall knew it could purchase "GET THERE" look-alikes from Thom McAn, which it was entitled to do.[5] Moreover, plaintiff's complaint alleges only that defendants engaged in palming off in Hawaii. Acts occurring in Louisiana are not relevant to this claim.

Plaintiff stresses that defendants have intentionally made exact copies of its shoes, the soles of which are alleged to be trademarks, and that this provides evidence of fraud and intent to palm off. As determined previously, the soles are not trademarks, and defendants have a right to copy them. Since palming off "goes to the question of marketing, not to the question of manufacture," *B. H. Bunn Co. v. AAA Replacement Part Co., supra*, 451 F.2d at 1263, defendants' permissible act of copying cannot be used as proof of unfair competition.

Finally, plaintiff suggests that palming off occurs when a customer sees a Thom McAn shoe in a store window, mistakes it for a Famolare, asks the salesperson for the shoe in the window, and is given the Thom McAn shoe. Again, however, this argument, which rests on a speculative factual situation, assumes that the Famolare sole is a trademark. If it were, perhaps a brand request might occur when a customer pointed to a wavy-bottom shoe. In that situation, the customer could not then be given a non-Famolare shoe. But here, the wavy-bottom sole is not a trademark, and

---

5. Plaintiff does not allege that defendants ever called their shoes "GET THERE." Thus, this case differs from *Coca-Cola Co. v. Foods, Inc.*, 220 F.Supp. 101, 103 (D.S.D.1963), where defendants substituted another beverage in response to orders for plaintiff's product, and often confirmed the orders by responding "Coke."

defendants are therefore not guilty of palming off simply because some customers may be unable to distinguish Thom McAn and Famolare shoes without looking at the labels on the insoles. "[M]ere inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying that which the federal patent [and trademark] laws permit to be copied." *Sears, Roebuck & Co. v. Stiffel Co., supra,* 376 U.S. at 232, 84 S.Ct. at 789.

### C. *Contributory Palming Off*

Plaintiff argues that defendants committed the related tort of contributory palming off by intentionally enabling retail dealers to defraud customers by palming off Thom McAn shoes as Famolare shoes. Plaintiff cites two incidents, both of which occurred outside Hawaii. First, Dillan Shoe Corporation of Yuba City and Marysville, California, advertised Thom McAn "GET THERE" and "HI THERE" look alikes, showing pictures of them in conjunction with Famolare's trademarks "GET THERE" and "HI THERE," and sold shoes in response to that advertisement. Second, on March 2, 1978, Larry Floyd purchased a pair of Thom McAn shoes at a retail shoe store in Albuquerque, New Mexico, and was told that they were "GET THERES."

▉ Plaintiff has done no more than recount two isolated incidents, both of which occurred outside Hawaii. Such a showing, aside from being irrelevant, is insufficient to raise a triable issue of fact. Moreover, contributory palming off is present only where the retailer's wrongdoing flowed directly from the manufacturer's or wholesaler's wrongful acts and should have been anticipated by him. In *Reid, Murdoch & Co. v. H. P. Coffee Co.,* 48 F.2d 817 (8th Cir.), *cert. denied,* 284 U.S. 621, 52 S.Ct. 9, 76 L.Ed. 529 (1931), relied upon by plaintiff, the supplier of a brand of coffee labeled "Monarch" infringed plaintiff's trademark and was also found liable for the palming off by its retailers, who advertised coffee cans as "Monarch" without attempting to distinguish them from plaintiff's superior product:

The acts of these retail merchants might well have been anticipated by the defendant. These goods were supplied by the defendant for the purpose of being resold on the market, and the use of this word "Monarch" by it made it possible for the retail merchants to commit a fraud upon the public to the injury of the plaintiff.

Similarly, in *William R. Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 530, 44 S.Ct. 615, 68 L.Ed. 1161 (1924), defendant's agents persuaded retail druggists to substitute defendant's product, a liquid preparation, when customers asked for plaintiff's product. See also *Upjohn Co. v. Schwartz,* 246 F.2d 254, 257 (2d Cir. 1957) (manufacturer sold product to druggists with the suggestion that it could be substituted for plaintiff's product); *Restatement of Torts* § 713 (1938) (uses the *Warner* case as an illustration of the tort of inducing fraudulent marketing).

▉ Here, defendants' permissible act of copying the design of plaintiff's shoes was at most an indirect cause of the retailers' misleading advertising and fraudulent sale of Thom McAn shoes. Defendants did nothing wrongful, and they could not reasonably have anticipated that the retailers would commit acts of unfair competition. Plaintiff does not allege that defendants induced the retailers to undertake these frauds. Accordingly, as a matter of law, defendants cannot be found liable for contributory palming off.

### D. *Misappropriation*

Finally, plaintiff argues, in very vague terms, that defendants have misappropriated the business value of the labor it expended in designing the wavy-bottom soles. Plaintiff's claim for damages is limited to the amount defendants would have been required to spend if they had designed the shoes without reliance upon another's previous efforts.

▉ The form of unfair competition known as misappropriation is found when the defendant has appropriated a property

right or interest of the plaintiff. *Hygienic Specialties Co. v. H. G. Salzman, Inc.*, 302 F.2d 614, 620–22 (2d Cir. 1962). Because the wavy-bottom soles of Famolare shoes are functional, plaintiff does not have a property interest in them warranting trademark protection. *See* Section II A *supra.* Competitors are free to copy the design, so long as they do not represent this product as plaintiff's. The granting to plaintiff of a right to be compensated for the labor it spent in designing the soles would impinge on the clear right of competitors to copy the design. It would grant a property interest which the law of trademark infringement has thus far denied.

The decision relied upon by plaintiff, *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), is not controlling. In that case, the Supreme Court held that a news gathering organization had a quasi property right in the results of its enterprise, and that a rival organization could not appropriate this news immediately after publication and then publish it for its own benefit. But this decision has been interpreted as limited to its underlying facts. *Pagliero v. Wallace China Co., supra*, 198 F.2d at 343. *Pagliero* specifically rejected an argument, comparable to plaintiff's, that *International News Service* grants a designer of a product that has not acquired a secondary meaning a right to be paid for its labors in developing and promoting the design. 198 F.2d at 341–43.

### III.   *Conclusion*

For the reasons stated, the action is stayed as to all issues regarding the validity, enforceability, and infringement of U.S. (utility) Patent No. 3,936,956, U.S. Design Patent No. 235,701, and U.S. Design Patent No. 235,819. Partial summary judgment is granted defendants on plaintiff's trademark infringement and unfair competition claims.

IT IS SO ORDERED.