**STANDARD TERRY MILLS, INC.**

v.

**SHEN MANUFACTURING COMPANY, INC.**

No. 84–3271.

United States District Court, E.D. Pennsylvania.

Nov. 22, 1985.

Robert B. Frailey, Harding, Earley, Follmer & Frailey, Philadelphia, Pa., for plaintiff.

Janis P. Farrell, Hart, Baxley, Daniels & Holton, New York City, for defendant.

### OPINION

LUONGO, Chief Judge.

Shen Manufacturing Company has for many years imported and sold a high quality kitchen towel known as the Ritz Flemish Wonder towel. In 1984, Standard Terry Mills began to manufacture and sell a virtually identical towel. Shen demanded that Standard Terry take its towel off the market. In response, Standard Terry brought this declaratory judgment action, claiming that the design of the towel is in the public domain. Shen has filed counterclaims alleging trademark infringement and unfair competition. After a non-jury trial, I have concluded that Standard Terry is entitled to a judgment in its favor. The following opinion constitutes the findings of fact and conclusions of law required by Fed.R. Civ.P. Rule 52(a).

### I. *Background*

Shen Manufacturing Company and Standard Terry Mills are Pennsylvania corporations and competitors in the kitchen textile products business. Both companies market products such as kitchen towels, dishcloths, potholders and aprons throughout the United States.

The Ritz Flemish Wonder towel No. 117[1] was designed in 1961 by the John Ritzenthaler Company, which became a division of Shen in 1968. The towel is manufactured in Belgium by Abbeloos et Fils and imported to the United States under an agreement between Abbeloos and the John Ritzenthaler Company. According to Shen's witnesses, the Flemish Wonder towel has acquired a reputation for quality and is Shen's best-selling product. The company has no registered trademark for the design of the towel.

In 1984, Standard Terry began to manufacture the Supra-Weave towel, which it concedes is a copy of the Flemish Wonder towel. Both towels are "glass type" kitchen towels of comparable appearance, quality and price. Glass toweling, a type of woven fabric characterized by absorbency and lintlessness, is commonly used for kitchen towels. Both towels are made of 100% cotton and have checked patterns, with white squares framed by intersecting stripes of a contrasting color. The white squares are woven in a loose "huckaback"[2] weave and the colored stripes are in a plain weave. The areas of huckaback weave make the towels absorbent. The framework of plain woven fabric gives the towels strength and durability. Both towels are available in a variety of colors.

The few minor differences between the towels do not affect their basic similarity. (See Appendix A for a sample portion of the Flemish Wonder towel and Appendix B for a sample portion of the Supra-Weave towel.) The Supra-Weave towel is slightly smaller and more brightly colored than the Ritz Flemish Wonder towel. The Supra-Weave towel is woven of two-ply yarn and has vertical border stripes, while the Flemish Wonder towel has single-ply yarn and both horizontal and vertical border stripes. Each towel has two labels—a large, removable paper label and a small, sewn-in cloth label. Although the labels contain similar information, they are completely different in appearance. Shen's labels show its "Ritz" trademark and Standard Terry's labels show its name in distinctive lettering.

Shen and Standard Terry use similar marketing and promotional techniques.

---

**1.** Defendant's witnesses testified that the Ritz Flemish Wonder towel line now includes more than one style of towel. The No. 117 towel which is the subject of this lawsuit is the original and basic Flemish Wonder towel. As used in this opinion, the terms "Ritz Flemish Wonder towel" and "Flemish Wonder towel" refer to style No. 117.

**2.** Huckaback weave is "[a] weave used principally for towels and glass-cloths in which a rough-surface effect is produced on a plain-ground texture by short floats, warp on one side and weft on the other." The Textile Institute, *Textile Terms and Definitions* 98 (7th ed. 1975).

Both towels are sold to major department stores and specialty shops, and both are advertised through department store catalogs and trade shows. Each towel generally sells for a retail price of $4.00 to $5.00 per towel.

Shen contends that it has a common law trademark in the "trade dress" or total image of the Flemish Wonder towel, and that Standard Terry's imitation of the towel constitutes trademark infringement and unfair competition. Standard Terry asserts that the design of the towel is in the public domain and can freely be copied.

## II. *Jurisdiction*

This action arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under the Pennsylvania Trademark Act, 54 Pa.C.S.A. §§ 1123 and 1126. Jurisdiction over the subject matter is based on 15 U.S.C. § 1121, 28 U.S.C. § 1338, and principles of pendent jurisdiction.

## III. *Legal Discussion*

Section 43(a) of the Lanham Act provides:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a). Actions involving common law trademark infringement and unfair competition fall within this section.

*See, e.g., Ideal Toy Corp. v. Plawner Toy Manufacturing Corp.,* 685 F.2d 78 (3d Cir. 1982); *Keene Corp. v. Paraflex Industries,* 653 F.2d 822 (3d Cir.1981).

In order to establish a violation of § 43(a), Shen must prove that the Ritz Flemish Wonder towel's trade dress is nonfunctional, that it has acquired secondary meaning, and that consumers are likely to confuse the Flemish Wonder towel with plaintiff's Supra-Weave towel. *Freixenet, S.A. v. Admiral Wine & Liquor Co.,* 731 F.2d 148, 151 (3d Cir.1984). The elements of the Pennsylvania cause of action are essentially the same and need not be treated separately. *E.g., University of Pittsburgh v. Champion Products, Inc.,* 566 F.Supp. 711, 719 (W.D.Pa.1983). Because I conclude that those features of the Flemish Wonder towel which Shen seeks to protect are functional, I need not reach the issues of secondary meaning and likelihood of confusion. *See Keene,* 653 F.2d at 827–28.

A product's functional features are not entitled to protection under trademark law. *Keene,* 653 F.2d at 824. Features are functional if they are "essential to the use or purpose of the article" or if they "affect[ ] the cost or quality of the article." *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982). According to the Court of Appeals for the Third Circuit, "the essence of the question" of functionality "is whether a particular feature of a product or service is substantially related to its value *as a product or service, i.e.,* if the feature is part of the 'function' served, or whether the primary value of a particular feature is the identification of the provider." *United States Golf Association v. St. Andrews Systems,* 749 F.2d 1028, 1033 (3d Cir.1984). An important factor to be considered in determining whether a feature is functional is whether prohibition of imitation would substantially hinder competition. *Id.* at 1033–34; *Keene,* 653 F.2d at 827.

Defendant seeks protection for the image, or overall design and quality, of the

Ritz Flemish Wonder towel. Features which contribute to the towel's image are the cotton yarn, the weave pattern, the check design and the color scheme.

■ The features of the Flemish Wonder towel that enhance its quality are clearly functional. *Inwood Laboratories,* 456 U.S. at 850 n. 10, 102 S.Ct. at 2187 n. 10. Howard Steidle, president of Shen, testified that a 100% cotton towel is lintless and absorbent and does not need to be ironed. Huckaback weave is incorporated into the towel for absorbency and the plain weave framework gives the towel stability, durability and strength. The evidence presented by both parties in this case establishes that absorbency, lintlessness, durability and wrinkle-free fabric are essential characteristics of a glass-type kitchen towel. Cotton yarn and a combination of huckaback and plain weaves are thus functional design features, integrally related to the use and purpose of the towel. *See, e.g., United States Golf Association,* 749 F.2d at 1033–34; *Black & Decker Manufacturing Co. v. Ever-Ready Appliance Manufacturing Co.,* 518 F.Supp. 607, 617 (E.D.Mo.1981), *aff'd,* 684 F.2d 546 (8th Cir.1982).

■ The concept of functionality can apply to aesthetic as well as strictly utilitarian design features. *Keene,* 653 F.2d at 824. According to the Third Circuit, an aesthetic feature is functional if it is significantly related to the utilitarian purpose of the product and is not merely arbitrary. *See id.* at 825. " 'Proof of nonfunctionality generally requires a showing that the element of the product serves no purpose other than identification.' " *Id.* at 826 (quoting *SK & F, Co. v. Premo Pharmaceutical Laboratories,* 625 F.2d 1055, 1063 (3d Cir.1980)). *See also Ideal Toy,* 685 F.2d at 81.

Under the standard set forth in *Keene,* the Flemish Wonder towel's overall appearance, including the check pattern created by contrasting weaves and colors, is functional. As defendant contends, the appearance of the towel does not affect its ability to dry dishes. It is clear from the evidence presented at trial, however, that the salea-bility of kitchen textile products depends largely upon their aesthetic appeal. Both plaintiff's and defendant's witnesses testified that consumers choose towels to complement their kitchens as well as to use in drying dishes. Check patterns in a variety of colors are popular with consumers and are extremely common in the kitchen textile industry. The appearance of the Flemish Wonder towel, far from being merely arbitrary, is "intended to appeal to the consumer's aesthetic values and is purchased for this reason." *Famolare, Inc. v. Melville Corp.,* 472 F.Supp. 738, 744 (D.Hawaii 1979), *aff'd mem.,* 652 F.2d 62 (9th Cir. 1981). The overall design of the towel serves the purpose of ornamentation, not identification. It is therefore functional and not subject to trademark law protection. *See Keene,* 653 F.2d at 826. *See also, e.g., Industria Arredamenti Fratelli Saporiti v. Charles Craig, Ltd.,* 725 F.2d 18, 19–20 (2d Cir.1984); *Vuitton et Fils S.A. v. J. Young Enterprises,* 644 F.2d 769, 774 (9th Cir.1981); *Meadowcraft, Inc. v. B.I. Industries,* 226 U.S.P.Q. 244, 246–47 (N.D.Ala.1985); *University of Pittsburgh v. Champion Products, Inc.,* 566 F.Supp. 711 (W.D.Pa.1983); *Black & Decker,* 518 F.Supp. at 617; Restatement of Torts § 742, comment a (1938) ("When goods are bought largely for their aesthetic value, their features may be functional because they definitely contribute to that value and thus aid the performance of an object for which the goods are intended.").

■ The fact that Standard Terry could have manufactured a kitchen towel with any number of different check patterns does not mandate a finding that Shen's pattern is nonfunctional. The availability of alternative designs does have some bearing on the question whether restricting imitation of a feature will hinder competition. As the Third Circuit made clear in *Keene,* however, a design is not nonfunctional merely because different shapes or patterns could be used. *Keene,* 653 F.2d at 827. *See also Vaughan Novelty Manufacturing Co. v. G.G. Greene Manufacturing Corp.,* 202 F.2d 172, 175 n. 10 (3d Cir.),

*cert. denied*, 346 U.S. 820, 74 S.Ct. 34, 98 L.Ed. 346 (1953). The evidence in this case shows that check patterns are standard in the kitchen textile industry, and that the variations among the different checks are relatively minor. To grant a manufacturer a monopoly on a particular check pattern merely because competitors can make slight variations would unduly restrict competition in the production of textile goods with attractive and popular designs and colors.

■ It may seem unjust that a manufacturer can benefit from a competitor's goodwill by copying a successful product. Under the law of trademarks, however,

> [p]roducts or features which have not qualified for patent protection but which are functional are in the public domain, and are fair game for imitation and copying. Our natural inclination to disapprove of such conduct must give way to the public policy favoring competition, even by slavish copying, of products not entitled to federal patent protection.

*Keene*, 653 F.2d at 824. *See also Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231–32, 84 S.Ct. 784, 789, 11 L.Ed.2d 661 (1964).

■ The design of the Flemish Wonder towel is functional, and Standard Terry is free to copy it. All Shen can demand is that Standard Terry take reasonable steps to prevent buyers of the Supra-Weave towel from thinking they have purchased Shen's towel. *See Vaughan*, 202 F.2d at 176; *University of Pittsburgh*, 566 F.Supp. at 721. Standard Terry's labels, price lists and catalogs clearly indicate that it is the source of the Supra-Weave towel, and there is no evidence that Standard Terry has attempted to pass off its towel as originating from Shen or the John Ritzenthaler Company. Accordingly, I conclude that Standard Terry's imitation of the overall design and quality of the Flemish Wonder towel does not constitute unfair competition or trademark infringement.

### IV. *Attorneys' Fees*

Finally, plaintiff seeks attorneys' fees. Attorneys' fees are not ordinarily recoverable absent a statutory authorization, *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), and § 43(a) of the Lanham Act contains no such authorization. Section 35(a), however, which sets forth remedies available in actions involving registered trademarks, provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). It is not clear from the Lanham Act whether the § 35(a) remedies are available in common law trademark infringement actions arising under § 43(a). *See, e.g., Burndy Corp. v. Teledyne Industries*, 748 F.2d 767, 771–72 & n. 3 (2d Cir.1984) (and cases cited therein); *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450 (11th Cir.1984). *See also Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978) (applying § 35 in a common law trademark case without discussing the fact that § 35 is by its terms limited to cases involving registered trademarks).

■ Assuming without deciding that the attorneys' fee provision does apply in this case, I nevertheless conclude that this is not an "exceptional case" justifying an award of fees. Fees should be awarded only upon a showing of bad faith or malicious conduct. *See, e.g., Brand v. NCC Corp.*, 540 F.Supp. 562, 565 (E.D.Pa.1982); *Ace Hardware Co. v. Ace Hardware Corp.*, 532 F.Supp. 770, 773 (N.D.N.Y. 1982); *Jones Apparel Group, Inc. v. Steinman*, 466 F.Supp. 560, 564 (E.D.Pa.1979). Plaintiff has made no such showing and its request for attorneys' fees will accordingly be denied.

## APPENDIX A

SAMPLE PORTION OF
SHEN MANUFACTURING COMPANY'S RITZ FLEMISH WONDER TOWEL

798

SAMPLE PORTION OF
STANDARD TERRY MILLS' SUPRA-WEAVE TOWEL

**SUPRA · WEAVE™**

**QUICK · DRY TOWEL**

100% COTTON · LOOMED IN AMERICA
IN THE TRADITIONAL EUROPEAN MANNER
WITH IMPROVED 2 PLY CONSTRUCTION FOR
BETTER ABSORBENCY AND EXTRA DURABILITY
· FAST DRYING AND LINT FREE.