PAGLIERO et al. v. WALLACE CHINA CO., Limited.

No. 13094.

United States Court of Appeals
Ninth Circuit.

July 1, 1952.

Rehearing Denied July 29, 1952.

Henry Gifford Hardy, Hauerken, St. Clair & Viadro, San Francisco, Cal., for appellant.

C. A. Miketta, Los Angeles, Cal., Naylor & Lassagne, Jas. M. Naylor, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellee sought relief in the District Court by way of application for a preliminary and permanent injunction and, for damages because of an alleged commission by appellants of acts of unfair competition and trade-mark infringement. The trial court granted a preliminary injunction and it is an appeal from that order which brings the case here.

Appellee Wallace China Company, hereinafter called Wallace, has manufactured and sold vitrified hotel china for many years. Purchase of hotel china is induced, in part, by virtue of its attractive appearance. Wallace, in common with many other manufacturers of china, has employed artists to create suitable designs for use in its manufacturing business. Wallace claims to have developed the application of over-all patterns to china, that is, a pattern which in an unbroken fashion covers the entire upper surface of the plate. Four distinctive designs are alleged to have been first employed by Wallace; and, similarly, Wallace alleges that it was first in the field to use the words "Tweed", "Hibiscus", "Shadow-leaf", and "Magnolia" to denominate these particular patterns. Wallace claims to have created a substantial market for its products bearing these designs by virtue of extensive advertising, carried on in part by Wallace and in part by its dealers, wherein the designs and names adopted to designate them have been popularized by their use in catalogues, price lists and other literature distributed by Wallace and its dealers.

At the hearing on the application for the temporary injunction affidavits were introduced in evidence purporting to show that Wallace has acquired a reputation in the trade, not merely for the excellence and attractiveness of its designs but, in addition, because of the allegedly superior quality of its product. The affidavits suggest that the source of china is of importance to the purchasing public. Through the years both the designs and their names are alleged to have become associated in the minds of the trade and the consumer as indicating a Wallace product; hence, it is thus attempted to establish a secondary meaning for the designs and for the words used to designate them. Appellants Pagliero Brothers, doing business as Technical Porcelain and Chinaware Company, hereinafter called Tepco, have been competitors of Wallace for some time. Tepco manufactures and sells vitrified hotel china to the same dealers and middlemen as does Wallace. Tepco uses the four designs allegedly originated by Wallace and applies the designs to china of substantially identical physical dimensions as that of Wallace. In addition, Tepco has denominated these designs, as applied to its china, by the same words chosen by Wallace for this purpose. Tepco has used said words for such purpose on its shipping carton and price lists, although the carton and price lists have Tepco's name as manufacturer displayed prominently. Wallace further claims that Tepco's china is of inferior quality.

The acts of unfair competition alleged are: (1) Simple use of the designs by Tepco; (2) use of the designs in view of the secondary meaning sought to be established for them . and consequent deception of the purchasing public; (3) a conspiracy by Tepco with the engraver who prepared engraving rolls for Wallace in which the engraver copied the rollers and designs for Tepco; (4) the copying of the color, marking and arrangement of Wallace's shipping cartons by Tepco.

The act of trade-mark infringement alleged is the use by Tepco of the words "Hibiscus", "Magnolia", "Shadowleaf", and "Tweed", to designate its imitations of Wallace designs, such use exemplified by the price lists and shipping cartons. Wallace does not contend that the words have been registered as trade-marks, or that the designs have been patented or copyrighted. The trial court expressly found that they were not.

Tepco maintains that, in accordance with the custom of trade, all pieces of china manufactured by it, including those impressed with imitations of Wallace designs, bear on the underside of the china Tepco's name as manufacturer. Tepco alleged that the designs were not original with Wallace, that it had in fact used one of the designs, "Tweed", long before Wallace, and that its china was not of inferior quality.

The preliminary injunction granted by the District Court restrained Tepco from "* * * disposing of china bearing patterns deceptively similar to those originated by plaintiff * * * and from using plaintiff's trade names or trade-marks 'Shadowleaf', 'Tweed', 'Hibiscus', and 'Magnolia', in the identification of hotel chinaware manufactured and sold by the defendants.'" There is no finding, relative to the alleged conspiracy or imitation of shipping cartons and the court's order makes no reference to those matters.

## I. Jurisdiction.

While the complaint is denominated "Complaint for Unfair Competition and Trade-Mark Infringement," it is apparent that there is no registered trade-mark infringement involved. The words used to designate the designs were never registered under any law. The designs were neither patented, nor copyrighted. Hence, it is clear no jurisdiction exists in a federal court under 28 U.S.C.A. § 1338(b) because there is no "related claim" disclosed in the complaint. Diversity of citizenship is not present since Wallace and Tepco are residents of California. There is, however, an independent ground for federal jurisdiction in a case such as this involving, as it does, a "naked" claim of unfair competition. In Stauffer v. Exley, 9 Cir., 184 F.2d 962, we held that where there is present the requisite effect on interstate commerce, the Lanham Act created substantive rights and remedies available to United States citizens and neither diversity of citizenship nor jurisdictional amount need be present.[1] 15 U.S.C.A. § 1121. The scope of the rights created by the Lanham Act, 15 U.S.C.A. §§ 1125, 1126(b), 1126(g), 1126(h), 1126(i), has not as yet been subjected to full judicial scrutiny; but the test in this situation is no different from that of other tests for federal jurisdiction. If the complaint raises a substantial claim of federal right under the Lanham Act the District Courts have jurisdiction of the case notwithstanding it may ultimately be found that the alleged right was not created by the Act. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939.

## II. The Injunction.

### A. Appropriation of the Designs.

We first consider whether Wallace has an exclusive right to the designs on the assumption they have not acquired a secondary meaning. Wallace's complaint is that Tepco copies and imitates its (Wallace's)

[1]. There was no point raised in the case of Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 1951, 191 F.2d 141, as to the jurisdiction of the District Court in regard to unfair competition. Examination of the briefs in that case reveals that both parties relied upon California cases as defining unfair competition in that state and no claim was made that other than the local state law as to unfair competition was applicable.

342

designs to the latter's competitive detriment. The theory of the wrong is apparently that Tepco has benefited from the fruits of Wallace's business activities and efforts. Authority for granting relief under such circumstances must be found to exist, if at all, in the Lanham Act. Our conclusion is that said Act grants no such relief.

There has been much discussion as to the meaning of the term "unfair competition" as used in § 44(h) of the Act and the scope of the protection afforded under the International Conventions mentioned in § 44(b) (1) and (2).[2] The general consensus of the commentators is that, at the least, the area of federal rights extends considerably beyond that of simple non-technical trademark infringement. Indeed, in view of the seemingly broad language of the conventions, such a construction is justified, at least so far as the rights created by international conventions are made available to United States citizens by § 44(b) and § 44(i) of the Act.

We do not attempt here to lay down definitive limits to the rights created in the Lanham Act by adoption from the conventions. See 53 Stat. 1748. (Paris Convention as modified); 46 Stat. 2907 (Inter-American Convention). So far as the conventions declare specific acts and practices unlawful a more or less definite area has been established, but so far as interpretation of designedly broad terms is concerned, words uttered in a different context over thirty years ago by Justice Brandeis are still relevant: " * * * an enumeration, however comprehensive of existing methods of unfair competition must necessarily soon prove incomplete, as with new conditions constantly arising novel unfair methods would be devised and developed." Federal Trade Commission v. Gratz, 1920, 253 U.S. 421, 437, 40 S.Ct. 572, 578, 64 L.Ed. 993.

The wrong alleged is Tepco's use of designs virtually identical to those used by Wallace. Wallace's right to exclusive use of these designs does not and cannot (since the trial court found the time for patent or copyright applications has long expired) depend upon statutory authorization. Wallace asks to be protected in its market, and the enjoyment of a monopoly, because it has worked hard and spent money to develop this market and because it was the first to use and successfully exploit the allegedly "distinctive" designs in question. We find nothing in the conventions that requires this result. See Ladas, International protection of Industrial Property, §§ 483–487, §§ 563–565. The specific acts and practices condemned by the conventions, Article 10½ of the Paris Convention, and Article 21 of the Inter-American Convention, do not include the acts charged against Tepco here. Competition by imitation where secondary meaning is not involved apparently was not considered sufficiently important to merit particularization as an unlawful act. Insofar as those specific provisions shed light on the content to be given the general definitions of unfair competition, substantially similar in language in both conventions, (compare " * * * act of competition contrary to honest practice in industrial or commercial matters * * * ", Article 10½ of the Paris Convention, with " * * * act * * * contrary to commercial good faith or to the normal and honorable development of industrial or business activities * * * ", Article 20 of the Inter-American Convention), they do not help Wallace, since the present claim is not analogous to the specific acts condemned. Cf. Note, 51 Col.L.Rev. 1053 (1951) and articles cited in note 1.

We do not think that the rights created by § 44(h) go further than the treaties in this respect. Cf. Toulmin, Trade-Mark Act of 1946, 132 (excerpt from Senate Report); House Hearing on H.R. 4744, 76th Cong. 1st Sess. 164-9. Legislation specifically granting greater protection to

2. Roberts, The New Trade-Mark Manual, 168 et seq.; Andrus & Sceales, The New Trade-Mark Act, 1947, Wis.L.Rev. 618, 628–9; Diggins, Federal & State Regulation of Trade-Marks, 14 Law and Contemp.Prob. 200, 209–13 (1949); March, Unfair Competition Defined, 37 T.M.Rep. 731, 735 (1947); Rogers, New Concepts of Unfair Competition, 38 T.M.Rep. 259, 271–2 (1948); Note, 51 Col.L.Rev. 1053. (1951).

designs has failed of passage in Congress in prior years. Even though we accept the view that "unfair competition" is used in a sense broader than its common law meaning,[3] nevertheless federal courts have not felt impelled to grant relief in this type of situation. The authoritative case that lends the most support to Wallace's claim is, of course, International News Service v. Associated Press, 1918, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211. But the logic of the International News rationale has not been extended to the design situation. Cheney Bros. v. Doris Silk Corp., 2 Cir., 1929, 35 F. 2d 279, certiorari denied, 1930, 281 U.S. 728, 50 S.Ct. 245, 74 L.Ed. 1145. It has been said "that much discussed decision [International News] really held no more than that a western newspaper might not take advantage of the fact that it was published some hours later than papers in the east, to copy the news which the plaintiff had collected at its own expense."[4]

### B. "Passing Off."

In this branch of the instant case the allegations of the complaint and supporting affidavits attempt to establish a cause of action for unfair competition based on secondary meaning. Such a right of action is given by § 44(h) of the Act, as well as by the provisions of the Conventions. A right to relief allegedly based upon secondary meaning is tested by the same requirements hitherto thought applicable. See Charles D. Briddell, Inc. v. Alglobe Trading Corp., supra, 194 F.2d at page 421.

Tepco's use of the designs in question cannot be enjoined even though it be assumed that Wallace can establish secondary meaning for them. Imitation of the physical details and designs of a competitor's product may be actionable, if the particular features imitated are "non-functional" and have acquired a secondary meaning. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299. But, where the features are "functional" there is normally no right to relief. "Functional" in this sense might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright.[5] On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made.[6] Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

These criteria require the classification of the designs in question here as functional.[7] Affidavits introduced by Wallace repeat over and over again that one of the essential selling features of hotel china, if, indeed, not the primary, is the design. The attractiveness and eye-appeal of the

3. Cf. 1 Callman, Unfair Competition & Trade-Marks, § 4.1 (2d Ed.1950), with Charles D. Briddell, Inc. v. Alglobe Trading Corp., 2 Cir., 1952, 194 F.2d 416, 421.

4. See R.C.A. Mfg. Co. v. Whiteman, 2 Cir., 114 F.2d 86, 90, certiorari denied, 1940, 311 U.S. 712, 61 S.Ct. 393, 85 L.Ed. 463. See Handler, Unfair Competition, 21 Iowa L.Rev. 175, 187–191 (1936); Chafee, Unfair Competition, 53 Harv.L.Rev. 1289, 1314 (1940); Note 31 Col.L.Rev. 477 (1931); Cf. Mavco v. Hampden Sales Ass'n. 1948, 273 App.Div. 297, 77 N.Y. S.2d 510; Charles D. Briddell, Inc. v. Alglobe Trading Corp., 2 Cir., 1952, 194 F.2d 416.

5. Cf. William R. Warner & Co. v. Eli Lilly & Co., 1923, 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161. Smith, Kline & French Laboratories v. Waldman, D.C.E. D.Pa.1946, 69 F.Supp. 646.

6. Cases in Note 5, and Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N.E. 667; Notes, 32 Harv.L.Rev., 181 (1918); 3 Callman, Unfair Competition and Trade-Marks, §§ 77.4(e) (1), 77.4(e) (2); Note 23 Temple L.Q. 64 (1949).

7. Cf. Cheney v. Doris Silk Co., 2 Cir., 1929, 35 F.2d 279; Restatement, Torts, § 742, Comment a; 3 Callman, supra, note 4, § 77.4(e) (3).

design sells the china. Moreover, from the standpoint of the purchaser china satisfies a demand for the aesthetic as well as for the utilitarian, and the design on china is, at least in part, the response to such demand. The granting of relief in this type of situation would render Wallace immune from the most direct and effective competition with regard to these lines of china. It seems clear that these designs are not merely indicia of source, so that one who copies them can have no real purpose other than to trade on his competitor's reputation. On the contrary, to imitate is to compete in this type of situation. Of course, Tepco can also compete by developing designs even more aesthetically satisfying, but the possibility that an alternative product might be developed has never been considered a barrier to permitting imitation competition in other types of cases. The law encourages competition not only in creativeness but in economy of manufacture and distribution as well. Hence, the design being a functional feature of the china, we find it unnecessary to inquire into the adequacy of the showing made as to secondary meaning of the designs.

The injunction also prohibited Tepco from using the terms "Shadowleaf", "Tweed", "Hibiscus" and "Magnolia" "* * * in the identification of the hotel china-ware manufactured and sold * * * [by it]." From the showing made on the application for the preliminary injunction we are not prepared to say that the trial court abused its discretion in awarding temporary relief in this respect. The injunction does not prohibit descriptive uses for the words, but only denominative or, in effect, trade-mark uses. The question of whether deception has been practiced in the use of the words and whether they have acquired a secondary meaning is one which the parties should have full opportunity to present and defend against on a hearing of the merits. Doeskin Products v. United Paper Co., 7 Cir., 1952, 195 F.2d 356.

The preliminary injunction is modified by striking therefrom all reference to the use of the designs by Tepco, and as so modified the preliminary injunction will stand.