**UNITAL, LIMITED, Plaintiff,**

v.

**SLEEPCO MFG., LTD., Sleepco Holdings, Ltd., Jack Chatvaire, Dennis Charles Daniels, and Marvin Dale Roberts, Defendants.**

**No. C84–1196D.**

United States District Court,
W.D. Washington.

Dec. 17, 1985.

William O. Ferron, Jr., Seed & Berry, Seattle, Wash., for plaintiff.

C. Dean Little, LeSourd & Patten, Seattle, Wash., for defendants.

MEMORANDUM AND ORDER

DIMMICK, District Judge.

The plaintiff, Unital Limited ("Unital"), is seeking the equivalent of a patent mo-

nopoly on an unpatented, unregistered roof design that did not originate solely with Unital. After hearing oral argument, the Court grants summary judgment to defendants, Sleepco Mfg., Ltd., *et al.* ("Sleepco").

## I. JURISDICTION AND CHOICE OF LAW

Unital seeks injunctive and monetary relief from Sleepco for alleged copying of the roof contour of a sleeper cab on a long-haul truck. Sleepco moves for summary judgment.

Unital brings its action under 15 U.S.C. § 1125(a) (1982) of the Lanham Act for false designation of origin and under Washington law for unfair competition by means of common-law trademark infringement and passing off, for violation of consumer protection law, and for misappropriation of trade secrets. Subject matter jurisdiction is based on both the Lanham Act and diversity. Unital's state claims are joined with its federal claim as provided by 28 U.S.C. § 1338(b).

 The gravamen of Unital's complaint is that Sleepco has unfairly competed with Unital by using Unital's unregistered trademark. The Lanham Act provides a federal remedy for use of another's unregistered trademark even though a remedy is also provided by the common law. *New West Corp. v. Nym Co. of California, Inc.*, 595 F.2d 1194, 1198–99 (9th Cir.1979). The intent of Congress in passing the Lanham Act was to regulate commerce by making actionable the deceptive and misleading use of trademarks, whether registered or not, and to protect persons engaged in such commerce against unfair competition. *Id.* at 1199. As the *New West* court explained, both statutory and common-law (unregistered) trademark infringements are aspects of unfair competition under the federal statute. *Id.* at 1201. The present action is

for common-law trademark infringement involving goods in both interstate and international commerce. Although the parties are diverse and state law claims are made, the primary source of the rights sued upon is federal law. *Id.; accord International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 n. 8 (9th Cir.1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). Unital has, in any event, relied on federal, not state, substantive law. *See* 633 F.2d at 917 (where source of right is federal statute and plaintiff invokes federal substantive law, court applies federal law even where jurisdiction is based on diversity).

## II. SUMMARY OF FACTS

The undisputed facts in this case are that Unital did not have a patent or registered trademark for the step-with-fin design at issue. (See Appendix A). Unital was asked by its customer Western Star Trucks to improve the roofline of the sleeper cab that Unital supplied to Western Star. Unital's president, in his deposition, admitted that Western Star requested some work on the appearance of the top of the sleeper cabs. He explained that he and Western Star explored numerous ideas and approaches to come up with something that was very attractive. He described this design effort as a process of going "back and forth." Western Star approved the final step-with-fin design.

Unital's evidence shows that the step-with-fin design was meant to serve two primary purposes. First, this design was necessary to fit two bunk beds in a sleeper cab.[1] Second, the design was intended to appeal to customers of Western Star. The president of Unital clearly states these purposes in his deposition; his affidavit adds a tertiary purpose, which was to distinguish Unital cabs from other cabs.

---

1. In his deposition, Unital's president explained how the step design was selected from among several designs proposed to Western Star: "It was done primarily from a mechanical application.... The front part of that sleeper is the walk-in section. The latter part is raised so a double bunk can be added. In other words, an upper and a lower bunk. We did not have enough head room for the upper bunk."

Unital never manufactured the step-with-fin roof. The roof was manufactured by Kelowna Industrial Plastics, a Canadian company not a party to this suit. At first, Western Star ordered these roofs directly from Kelowna. Unital supplied Western Star with the unfinished boxes without roofs. Shortly after the step-with-fin sleeper was sold as part of Western Star trucks, Western Star asked Unital to deal directly with Kelowna to simplify Western Star's paperwork. Unital then began ordering roofs from Kelowna and selling the assembled unfinished box-with-roof to Western Star.

In 1982, Western Star began buying its sleeper cab boxes (without roofs) from Sleepco. As before, Western Star had Kelowna make the fiberglass roofs from Western Star's plugs and molds. Western Star modified its roof by adding a wedge to the step-with-fin design; this modified design was attached to the sleeper boxes produced by Sleepco. (See Appendix A.) Sleepco did not participate in the design of the modified roof cap. As before, Western Star eventually asked its cab maker, now Sleepco, to buy roofs directly from Kelowna.

### III. LAW GOVERNING TRADEMARK INFRINGEMENT

■ To determine whether an unregistered, or common-law, trademark exists, the Court must balance two opposing economic interests: the preservation of free competition and the promotion of invention. The Court works within constitutional limits set by Article 1 § 8, cl. 8, which empowers Congress "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Under subsequent federal patent and copyright law, the fundamental right to compete through imitation of a competitor's product may be only temporarily denied by means of patents, copyrights, or trademark registration. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 228–29, 84 S.Ct. 784, 786–87, 11 L.Ed.2d

661 *reh. denied,* 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964); *Re Morton-Norwich Products, Inc.,* 671 F.2d 1332, 1336–37 (C.C.P.A.1982). As a threshold requirement for legal protection, an invention or discovery must be demonstrably genuine "lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art." *Cuno Engineering Corp. v. Automatic Devices Corp.,* 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941), *quoted in* 376 U.S. at 230, 84 S.Ct. at 788. In the present-day patent and copyright system, "uniform federal standards are carefully used to promote invention while at the same time preserving free competition." *Sears,* 376 U.S. at 230–31, 84 S.Ct. at 788.

■ In a trademark infringement action under the Lanham Act, the plaintiff has the burden of establishing a right to exclusive use. *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769, 774–75 (9th Cir.1981). A registered trademark raises a prima facie case of exclusive right to use, shifting the burden of proof to the defendant. Where there is no registration, the plaintiff has the burden of establishing his right.

■ A right to exclusive use of a design or configuration is established by proof that (1) the design is nonfunctional *and* (2) the design serves primarily to indicate its source in one of two ways: (a) by being inherently distinctive or (b) by acquiring secondary meaning. *Vuitton,* 644 F.2d at 772–73; *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1029–30 (Fed.Cir.1985); *see also Re Morton-Norwich Products, Inc.,* 671 F.2d at 1343; *Truck Equipment Service Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1217 (8th Cir.1976), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). If the design is found to be functional, rather than "nonfunctional," the plaintiff has no legal protection against copying or imitation. Consequently, the second requirement, as to source-indication, need not be addressed. *Pagliero v. Wallace China Co.,* 198 F.2d 339, 344 (9th Cir.1952).

## A. Common-law Doctrine of Functionality

■ Functionality is generally approached as a factual question, although it is ultimately a legal conclusion. If evidence is submitted showing that copying is essential to competition, then the legal conclusion of "functionality" for trademark purposes can be reached. *Vuitton*, 644 F.2d at 775. In short, functionality is properly viewed as a mixed question of fact and law.

■ Where, as in the present case, the factual premises for a finding of functionality have not been disputed either in oral argument or by documentary evidence, summary judgment should be granted.

In its landmark case on the question of what is "functional" in a common-law trademark infringement action, the Ninth Circuit explained that:

> "Functional" ... connote[s] other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

*Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir.1952) (footnotes omitted). This often-quoted language governs this case. *See Fabrica, Inc. v. El Dorado Corp.*, 697 F.2d 890, 895 (9th Cir.1983) (*Pagliero* functionality test is applied to product features).

Although the *Pagliero* definition of functionality has been criticized as overinclusive, it still serves as the touchstone for the common-law doctrine of functionality. *See*

*Sicilia di R. Biebow & Co. v. Cox*, 732 F.2d 417, 427–29 (5th Cir.1984). As the Ninth Circuit observed in a registered trademark infringement case, "[t]he policy expressed in *Pagliero* and the cases decided under it is aimed at avoiding the use of a trademark to monopolize a design feature which, in itself and apart from its identification of source, improves the usefulness or appeal of the object it adorns." *Vuitton*, 644 F.2d at 774.

■ "Functionality," as defined in *Pagliero*, is a measure of the effect of a design or physical detail in the marketplace. The question, simply put, is what purpose does the design serve in the marketplace? If a design functions in the marketplace (1) by means of aesthetic appeal, (2) by increasing the utility or practicality of a product, or (3) by saving the consumer or producer time or money, then the design may be legally functional.

### (1) Aesthetic Appeal

■ If the design functions primarily to beautify a product, and eye-appeal is an essential selling feature, then the design is "functional" and thus will not be protected. *Famolare, Inc. v. Melville Corp.*, 472 F.Supp. 738, 744 (D.C.Hawaii 1979), *aff'd without opinion*, 652 F.2d 62 (9th Cir. 1981); *Pagliero*, 198 F.2d at 343–44. Even with a registered trademark, the court will still permit competition through imitation if the design is purely aesthetic and not an arbitrary symbol of source, such as a logo. *Vuitton*, 644 F.2d at 774–75.

### (2) Increase in Utility or Practicality

If the design improves the utility or practicality of a product, then it may be legally functional. At the center of the tangled web of "functionality" analysis in federal case law is the confusion of two words: "function" and "utility." "Functionality" is a legal conclusion, not a factual description of usefulness. "Utility," in contrast, is a purely factual description. Utility may or may not be legally protected. A patent, for example, may serve to protect the in-

ventor of something useful. A useful shape may be registered as a trademark. In a situation such as the present case, where there is no patent or trademark, utility is simply one factor to be weighed by the court in its finding of "functionality" or "nonfunctionality."

■ If a design has special utility, then the court considers the need of competitors and the public for free access to that design. The court considers, for example, whether the utility of the product as a whole depends on the design in question. Would protection of the design throttle trade? Are there numerous other designs that would be as practical, as useful? *See, e.g., Sicilia di R. Biebow & Co. v. Cox,* 732 F.2d 417, 429 (5th Cir.1984) (design is functional if it is one of a limited number of equally efficient options and free competition would be unduly hindered).

### (3) Increase in Economy or Time Efficiency

■ If the design saves the consumer or producer time or expense, then the court considers the need of the public and of competitors for that design. Again, the central question is how protection will affect the marketplace.

### B. Application of the Functionality Doctrine

■ The design feature at issue here, the step-with-fin roofline, improves both the usefulness and appeal of the sleeper cab. In deposition testimony, the president of Unital explained that the step was chosen to provide head room for an upper bunk. He further averred that the purpose of the overall design was consumer appeal. As the *Vuitton* court emphasized, a company may not have a monopoly in producing a consumer good that has an aesthetically pleasing design. *Vuitton,* 644 F.2d at 777. *See also International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 917 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981) (ornamental features may fill a consumer need without serving

as a trademark even though such features may be nonutilitarian). Although Unital submitted an affidavit indicating that Unital intended the design to distinguish its sleeper cabs from those of other companies, Unital's evidence, viewed as a whole, shows that the primary purposes of the design were to improve utility and consumer appeal.

■ Unital's subjective intentions do not, in any event, determine the question of functionality. In *Vuitton,* the Ninth Circuit tested for "functionality" by asking whether consumers would tend to choose the plaintiff's goods for utilitarian or aesthetic reasons or whether their choice would be based on quality or prestige associated with plaintiff's goods. In the present case, no evidence has been submitted showing that truck buyers purchased trucks because of the brand of sleeper cab built into them. The undisputed fact is that consumers of long-haul trucks buy a particular manufacturer's finished truck by its brand name, such as Kenmore or Peterbilt, not by the make of its sleeper cab.

### C. Requirement of Notice to Competitors

The judicial requirements for establishing a right to exclusive use serve primarily to protect the freedom to compete effectively. These requirements serve another purpose, but one seldom addressed. This ancillary purpose is to ensure that competitors have notice of the protected nature of a design. Where a design is registered as a trademark, copyrighted, or patented, constructive notice is thereby given to potential competitors. Where no claim is recorded, however, a producer would compete at his peril if every useful, attractive, or practical innovation could be legally protected as a common-law trademark.

■ Notice to potential competitors is indirectly ensured by the source-indication requirement of the plaintiff's prima facie case. A *prima facie* case consists of both a showing of nonfunctionality and a showing of either inherent distinctiveness or sec-

ondary meaning. A design that is inherently distinctive will presumably carry its own message as to its source. A design with secondary meaning may not. Secondary meaning may be geographically confined, leaving out-of-state or international competitors, such as Sleepco, without notice that a design functions as a commonlaw trademark. *See Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). In the absence of such notice, the court must carefully scrutinize a commonlaw infringement case to ensure that the alleged infringer had fair warning of the protected status of the product or design at issue. Although we do not reach the question of such notice here, having found the roof design to be functional, the record before us reveals no evidence showing that Unital communicated an intent—by advertising, by means of its product,[2] or otherwise—to use the roof design as its trademark until it filed this suit.

### C. Unital's Remaining Claims.

■■■■ Because Unital's own evidence shows that the step-with-fin design was an attractive, practical, and in part a necessary innovation, there is no premise for Unital's claims of unfair competition under state law. Where federal law provides no legal protection for an unpatented, uncopyrighted, or unregistered article, a state may not prohibit copying of it or award damages for such copying. *Sears, Roe-*

buck & Co. v. Stiffel Co., 376 U.S. 225, 232–33, 84 S.Ct. 784, 789, 11 L.Ed.2d 661 *reh. denied*, 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964). Unital's pendent claim for consumer protection violations is accordingly dismissed. Unital's state claim of misappropriation of a trade secret (concerning another roof design) also fails because Unital has not submitted evidence rebutting Sleepco's evidence of an independent development of the design allegedly misappropriated.

### CONCLUSION

Unital has shown no basis, in its oral argument or written evidence, on which this Court can abridge Sleepco's fundamental right to compete through imitation of a competitor's product. As the United States Supreme Court observed in *Sears*, 376 U.S. at 232–33, 84 S.Ct. at 789, copying an unpatented design is " 'the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested.' " *Id.* at 231, 84 S.Ct. at 789, *quoting Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73 (1938). Even where the copying is identical, the inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying. *Id.*

Sleepco's motion for summary judgment is GRANTED. All requests for attorney's fees are DENIED. This case is therefore DISMISSED.

---

**2.** Whether the Unital sleeper cabs were labeled or not is disputed but not material. Unital has submitted no admissible evidence of consistent labeling of its sleeper cabs by Western Star or Volvo White, who sold well over 90 percent of all Unital sleepers before the suit began. Affidavits based on personal knowledge from Western Star and Volvo White verify Sleepco's assertion that Unital's sleeper cabs were unlabeled when sold to consumers.

APPENDIX A

Unital's step-with-fin
roof design.

Western Star truck with Sleepco
sleepercab, step-with-fin and
wedge roof design (side view).

Western Star truck with Sleepco
sleepercab (front view).