**SAN FRANCISCO MERCANTILE COMPANY, INC., a California corporation, Plaintiff,**

v.

**BEEBA'S CREATIONS, INC., a California corporation doing business as Body Drama, Defendant.**

**No. CV 87–3549 (CBM).**

United States District Court, C.D. California.

Aug. 24, 1988.

---

John P. Sutton, Inc., Deborah Bailey–Wells, Limbach, Limbach & Sutton, San Francisco, Cal., Robert B. Pringle, Robert B. Flaig, Nancy J. Skovholt, Thelen, Marrin, Johnson & Bridges, Los Angeles, Cal., for plaintiff, San Francisco Mercantile Co., Inc.

Allan Gabriel, Ronald M. St. Marie, Ervin, Cohen & Jessup, Beverly Hills, Cal., for defendant, Beeba's Creations, Inc.

**CONSUELO BLAND MARSHALL,**
District Judge.

This matter is before the Court on defendant Beebas Creations, Inc.'s motion for summary judgment, partial summary judgment or, in the alternative, summary adjudication of issues. Defendant also moves the Court for sanctions, and raises objections to certain evidence submitted by plaintiff in opposition to the summary judgment.

Many of the issues raised by the instant motion for summary judgment were before the Court at the hearing on plaintiff's motion for preliminary injunction, heard on October 5, 1987, which was denied in its entirety by the Court.

## BACKGROUND

The complaint alleges a cause of action for false designation of origin. Plaintiff alleges that defendant has violated the Lanham Act, section 43(a) by copying its unique designs of 100% cotton, Victorian style women's lingerie. The complaint does not state a cause of action for unfair competition.

The garments allegedly wrongfully copied were designed by plaintiff's designer Eileen West, under the registered trademark "Queen Anne's Lace." Although the complaint is vague as to the distinct violations, plaintiff essentially alleges that defendant violated two trademarks under 15 U.S.C. section 1125(a). The first violation alleged is as to the registered trademark "Queen Anne's Lace." Plaintiff alleges that defendant was selling its clothing under the name "QAL". The second alleged violation has been described by plaintiff both in its motion for preliminary injunction and in its current opposition to the motion for summary judgment as defendant's wrongful copying of the "look" of plaintiff's garments.

In the instant motion for summary judgment or partial summary judgment, defendant does not address the issue of the use of the name "QAL".

The issue now before the Court is whether defendant has violated federal trademark law against false designation of origin by designing and selling certain women's lingerie garments that are of 100% cotton, in the Victorian style, and substantially similar to certain garments which were designed and previously sold by plaintiffs. The burden at trial would be on plaintiff to prove three elements to support its claim of trademark infringement; plaintiff must prove that (1) the allegedly protected design was "non-functional," (2) the design had acquired a "secondary meaning" and (3) defendant's use of the design would lead to consumer confusion. Unless plaintiff can prove all three of these elements, plaintiff will lose at trial on the design issue. In the instant motion for summary judgment, defendant provides evidence as to the first two elements only, functionality and secondary meaning. It is defendant's contention that because plaintiff cannot sustain its burden on the first two issues, there is no need for the Court to reach the third issue of consumer confusion.

There are seven items of lingerie at issue in the complaint. These actually comprise four different designs, in several colors or patterns. The evidence shows that plaintiff no longer manufactures these items.

One item was sold by plaintiff only in 1985, the other styles were sold by plaintiff between 1984 and 1986. Only two of the styles have been advertised in a catalogue; that catalogue was from the year 1985.

## DISCUSSION

The complaint states a claim under 15 U.S.C. section 1125(a), which provides in pertinent part:

(a) Any person who shall ... use in connection with any goods or services, ... a false designation of origin, or any false description or representation ... shall be liable to a civil action by ... any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

Setting aside the issue of the registered trademark "Queen Anne's Lace" and the alleged violation by the use of the name "QAL," the designs at issue are not registered as trademarks. The Ninth Circuit has in a series of cases addressed the question of whether a design which is either the underlying product itself, an insignia or pattern of the product, or the outward packaging of the product is entitled to protection under section 1125(a) where that design of product, insignia or package was not actually registered as a trademark.

The exact definition and parameters of "trade dress" are not clear. In its holdings on the issue, the Ninth Circuit has distinguished between what it terms the "trade dress" and the actual product itself. Most trade dress infringement cases involve alleged infringement of the packaging or labeling of the product. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2nd Cir. 1985). Prior to the 1987 case of *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837 (9th Cir.1987), trade dress infringement cases in the Ninth Circuit have involved the copying of products' packages and displays. *Id.* at 841. The *Fuddruckers* case "expand[ed] the boundaries of trade dress infringement [by] seeking protection for a combination of elements employed in the marketing of restaurant services." *Id.* Essentially, in *Fuddruckers*, the Circuit acknowledged that a restaurant's decor, menu, layout and style of service could potentially acquire the source-distinguishing aspects of protectable trade dress such that their copying would cause consumer confusion. *Id.* The Second Circuit, in *LeSportsac*, explained that it had recognized that the design of a product itself may function as its packaging, serving to distinguish it from other products, and hence be protectable trade dress under § 43(a). *LeSportsac, Inc.*, 754 F.2d at 75. The Ninth Circuit has not gone so far as to hold that the product itself can be the trade dress. But even under the more expansive standard articulated by the Second Circuit in *LeSportsac*, the product is only protectable under the trade dress standard when its design also serves as a form of packaging so as to distinguish its source.

The distinction between the product itself and the trade dress is important because the trade dress is entitled to greater protection than the product itself. *Fabrica, Inc. v. El Dorado Corp.*, 697 F.2d 890 (9th Cir.1983). "[T]he law which permits one to market an identical copy of his competitor's product does not give him freedom to imitate the appearance of the package in which the article is sold ... [T]he public policy which permits the imitation of an article of commerce is without relevance to the dress in which the article is marketed." *Id.* at 895, quoting *Tas–T–Nut Co. v. Variety Nut & Date Co.*, 245 F.2d 3, 7 (6th Cir.1957). Essentially, the reasoning is that while allowing copying of the product itself promotes healthy competition, copying of the packaging or its trade dress equivalent can lead to confusion by consumers as to the source of the product.

Here, plaintiff appears to be contending that the designs at issue (as well as the entire "look" of its line of lingerie) is protectable under the standard used for trade dress. Based on the foregoing standard, it is doubtful whether the seven styles (four designs) of plaintiff's lingerie at issue are protectable as trade dress at all, even under the *LeSportsac* standard.

The burden is on the plaintiff trying to recover for trade dress infringement under section 43(a) to show that its trade dress:

(1) is non-functional, (2) has acquired a secondary meaning, and (3) is likely to be confused with defendant's product and trade dress by the consuming public. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987).

■ If a product's trade dress is non-functional, then it is protectable under trademark law, provided the second and third factors are met. In determining functionality, the trade dress must be analyzed as a whole. *Id.* at 1381. In articulating a test for functionality, the Supreme Court has stated that "a product feature is functional if it is essential to the [product's] use ... or if it affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982).

The circuits have attempted to flesh out this definition of "functional" trade dress. In an earlier attempt to articulate a definition, the Ninth Circuit held that a design was functional "[i]f the particular feature is an important ingredient in the commercial success of the product." *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 773 (9th Cir.1981), quoting the earlier decision of *Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir.1952). In such a situation, "the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made." *Id.*

In *Vuitton*, the Circuit focused on whether the original intent of the plaintiff's design was to beautify or to identify the product as having been manufactured by plaintiff. *Id.* The *Vuitton* case dealt with a registered trademark, the "LV" design with a floral background. The issue was whether the pattern as printed on luggage and handbags was functional or non-functional. In its holding, the *Vuitton* court further fleshed out the *Pagliero* definition of functionality, holding that "[f]unctional features of a product are features 'which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.'" *Id.* at 774. It is *not* enough to say that because the product feature(s) at issue are what the consumer wishes to purchase, the features are therefore functional, the problem being that the consumer may want to purchase the product because the features specifically identify the product with a particular manufacturer. Therefore, in *Vuitton* the Circuit modified the definition originally articulated in *Pagliero* to state that a feature is functional if it is the specific benefit the purchaser wants to buy and not because it identifies a particular manufacturer.

In *Vuitton*, the Circuit had to determine whether Vuitton's repeating pattern of "LV" plus floral insignia was attractive to consumers because it beautified the luggage or because it identified the luggage as having been manufactured by Vuitton, and hence carried a prestige factor. *Id.*

■ In the instant case, the burden is on the plaintiff, San Francisco Mercantile, to prove that the designs for which protection is sought are non-functional. *First Brands*, 809 F.2d at 1381. If, instead, the designs are found to be functional, it is not necessary to inquire into whether the designs have acquired secondary meaning. *Id.*

A unique arrangement of purely functional features constitutes a functional design not entitled as a matter of law to protection under the Lanham Act. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503 (9th Cir.1987).

In *Rachel*, the plaintiff created realistic reproductions of African animals for displays in Banana Republic stores. Banana Republic later went to another designer who allegedly made even more life-like replications. The plaintiff in Rachel wanted the Circuit to find that the copying of his reproductions, including life-like eyes and

ears, etc., was a trademark violation, arguing that because the eyes and ears did not work, they were non-functional. In holding against plaintiff, the Circuit held that "even similarity in expression is noninfringing when the nature of the creation makes similarity necessary.... Such 'indispensible expression' of ideas may be protected only against virtually identical copying." *Id.* at 1507. In *Rachel,* the Circuit refused to give plaintiff a monopoly on the idea of creating life-like animals for store displays. The Circuit explained in so holding that, "[w]hen the 'idea' and its 'expression' are thus inseparable, copying the 'expression' will not be barred, since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner." *Id.*

In the instant action, defendant contends that plaintiff is attempting to attain a monopoly of the idea of women's cotton, Victorian lingerie in the way disallowed by the Circuit in *Rachel.* Indeed, plaintiff's arguments and evidence appear to support such a contention, since plaintiff's arguments have consistently discussed the general "look" of the garments, rather than focusing on the specific designs at issue.

Here, the individual elements making up the "look," the lace, the cotton fabric, buttons, etc., are essential to gain the goal of a "Victorian" look. In *Rachel,* the Circuit noted that "Rachel sought to create realistic reproduction of animals. The features that he points to [eyes, ears, etc.] are all absolutely essential to that goal. None of these features is nonfunctional." *Id.* Similarly, here, if plaintiff wants a Victorian-like "look," the elements cited are essential to that goal.

Based on the foregoing, plaintiff has presented no evidence to dispute a finding that the elements making up the "look" of the garments amount to a functional trade dress. Moreover, the evidence put before the Court by defendant is that at all times the garments were sold with distinctly different labels and tags indicating the manufacturer. There is no evidence or argument by plaintiff that the garments in question were absolutely identical. For these reasons, the Court finds, as a matter of law, that the designs at issue and the elements which make up the designs are functional and therefore not protectable under federal trademark law.

■ Because the Court finds that the designs are functional and therefore not protectable trade dress, plaintiff's cause of action fails. However, in order to resolve all issues raised by the current motion for summary judgment, the Court makes the following findings concerning the second element of the test, whether the designs have acquired a "secondary meaning."

As with the question of functionality, "[w]hether a particular trade dress has acquired secondary meaning is a question of fact ..." *First Brands,* 809 F.2d at 1383. Again, the burden is on the plaintiff to prove that the product's trade dress has attained a secondary meaning. *Id.* Secondary meaning exists "when the purchasing public associates the [trade] dress with a single producer or source rather than just the product itself". *Id.*

In *First Brands,* the Circuit determined whether plaintiff's yellow plastic motor oil jug of a certain shape had attained a secondary meaning in the eyes of consumers. The Circuit explained that in order to prove secondary meaning, evidence of sales, advertising and promotional activities, submitted as evidence by a plaintiff, could be relevant. *Id.* However, such evidence alone would not be enough. The trademark plaintiff must show both that the advertising was directed at causing consumers to identify the product's trade dress at issue with that manufacturer, *and* that the ad campaign was successful at its efforts. *Id.*

In this case, defendant has brought evidence that the advertising campaign put on by plaintiff was relatively minimal; plaintiff has not produced evidence that its campaign was specifically directed at identifying the designs at issue with S.F. Mercantile or Eileen West in the minds of consumers.

Plaintiff does attempt to provide evidence that it contends demonstrates that the designs have, somehow, attained a sec-

ondary meaning by providing the results of surveys and declarations from confused consumers. Based on the Ninth Circuit's description of "secondary meaning," however, this evidence would go only to the third element, consumer confusion. Under the test articulated by the Ninth Circuit, the focus of inquiry as to the existence of secondary meaning is the plaintiff's advertising appeals to the consumers at large. *Id.* Plaintiff has failed to provide sufficient evidence of an advertisement campaign of an emphasis and scope sufficient to demonstrate an intent to create secondary meaning.

Because plaintiff has failed in its burden of demonstrating either nonfunctionality or secondary meaning, the Court does not reach the issue of consumer confusion.

### Objections to Evidence

Defendant has raised numerous objections to the evidence filed by plaintiff in opposition to the current motion for summary judgment.

Under Federal Rule of Civil Procedure 56(e), affidavits must be made on personal knowledge and set forth admissible evidence. The party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial. Here, plaintiff's evidence fails to set forth specific facts indicating that there is any question of fact as to the functionality or secondary meaning of the designs, and therefore, summary judgment is appropriate under 56(e). As to the request to strike, the Court considers only those portions of the declarations which are nonhearsay and within the affiant's knowledge. The Court considers the surveys submitted by plaintiff and Thornton's declaration only to the extent that they do not involve hearsay. Therefore, the Colton survey is stricken in its entirety. The Court considers the Sherrill survey to be probative only on the issue of consumer confusion, which issue the Court does not address in this order.

### MOTION FOR SANCTIONS

Defendant has also filed a motion for sanctions. Defendant bases its motion on Federal Rule of Civil Procedure 37(b)(2)(B) and (C) which provides for sanctions in the event that a party fails to comply with a discovery order of the the Court. Defendant requests that the Court award it sanctions against plaintiff in the form of dismissal, as well as monetary sanctions for plaintiff's alleged failure to produce its designer, Eileen West, for deposition. The evidence is that these depositions did begin to go forward. The evidence presented by defendant is not sufficient to demonstrate that the scheduling problems encountered in attempting to take West's deposition represented a conscious attempt by plaintiff to avoid compliance with the discovery order. Therefore, the motion for sanctions is denied.

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in part, as to all claims other than defendant's alleged use of the name "QAL".

Defendant's motion for sanctions is DENIED.

IT IS SO ORDERED.