**WALLACE INTERNATIONAL SILVERSMITHS, INC.,**
Plaintiff,

v.

**GODINGER SILVER ART CO., INC., Defendant.**

**No. 90 Civ. 2779 (CSH).**

United States District Court,
S.D. New York.

April 26, 1990.

**142**

Andrew Galway and Arlana Cohen, Liddy, Sullivan, Galway, Begler & Peroff, P.C., New York City, for plaintiff.

Martin Pavane and Andrew Brucker, Schechter, Brucker & Pavank, P.C., New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This action is before the Court on plaintiff's Order to Show Cause for a temporary restraining order. Plaintiff, Wallace International Silversmiths, Inc., manufactures and sells silverware, including a line of ornamented silverware called "Grande Baroque." Plaintiff seeks to enjoin defendant, Godinger Silver Art Co., Inc., from showing its new line of silverware called "20th Century Baroque" at the Annual New York Tabletop and Accessories Show. Plaintiff brings this suit under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Wallace International has been manufacturing and selling the line of silverware called "Grande Baroque" since 1941. As the name indicates, the silverware is ornate, massive and flowery: it has indented, flowery roots and scrolls and curls along the side of the shaft, and flower arrangements along the front of the shaft. In a word, it is "Baroque." The defendant is about to begin marketing a similar line of silverware called "20th Century Baroque." Defendant's product is substantially similar to plaintiff's: it has all the same shapes, including the indented root, the curls and the flowers. The dimensions of the shapes are slightly different and the overall look of the product is decidedly cheaper looking. However, defendant admits that the products are substantially similar. In fact, defendant admits that it was "aware of" and "inspired by" plaintiff's product.

In addition, both plaintiff's and defendant's products are substantially similar to the products of other non-party manufacturers of silverware. *See* Defendant's Exhibit G. Oneida sells a "Michelangelo" line of silverware that resembles the parties' "Baroque" style. Lunt sells an "Eloquence" line, and Reed & Barton an "El Greco" line, that resemble the silverware at issue in this case. Perhaps the best description of all of these lines of silverware is in Reed & Barton's advertisement for "El Greco": "designed expressly for those who like their sterling silver massive, elegant, richly carved, and detailed."

At the hearing on the Order to Show Cause, plaintiff's counsel argued that the "Grande Baroque" line is the first or second best seller in the world and that the "Grande Baroque" design has come to be associated with the name "Wallace." Plaintiff seeks the protection of the trademark laws claiming that the defendant is infringing its unregistered trade dress.[1]

---

1. Plaintiff has applied to register its "Grande Baroque" design. The application has been pending since December 1989.

Defendant concedes that the "20th Century Baroque" design is substantially similar to plaintiff's trade dress, in fact, defendant concedes that it was inspired by plaintiff's design; however, defendant contends that the "Baroque" style is not protected by the trademark laws because it is aesthetically functional. Defendant also argues that plaintiff will not prevail on secondary meaning and that there is no likelihood of confusion because it prominently displays its name in all its marketing.

■ The rule in the Second Circuit is that a preliminary injunction may issue where a party establishes both possible irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 74 (2d Cir.1985) (Lanham Act § 43(a) action). The same criteria apply to a temporary restraining order.

■ Section 43(a) of the Lanham Act establishes a federal law of unfair competition regardless of whether the protected party has a federally registered trademark. The Act prohibits, *inter alia*, the "use in connection with any goods or services ... [of] a false designation of origin ..., including words or other symbols tending falsely to describe or represent the same ..." 15 U.S.C. § 1125(a).

A trade dress is subject to protection under the Lanham Act if it is nonfunctional and has acquired secondary meaning. *LeSportsac v. K Mart Corp., supra,* at 75.

■ In *Pagliero v. Wallace China Co.,* the plaintiff, Wallace China Co., had acquired a reputation for manufacturing chinaware of superior quality. 198 F.2d 339 (9th Cir.1952). Wallace produced four lines of chinaware with different patterns covering the surface of the plates. These lines were called "Tweed", "Hibiscus", "Shadowleaf", and "Magnolia". Defendant began manufacturing and selling the same lines of chinaware: same patterns, same

dimensions, and same names. The only difference in the products was on the underside of the china where the manufacturer printed its name.

The Ninth Circuit ruled that the chinaware was not subject to the protection of the Lanham Act because the designs were "functional." The Court wrote:

> [Defendant's] use of the designs in question cannot be enjoined even though it be assumed that Wallace can establish secondary meaning for them.... [W]here the features are "functional" there is normally no right to relief. "Functional" in this sense might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

*Pagliero, supra* at 343 (footnotes omitted). On the basis of this legal standard, the Court concluded that the china designs were not protected because "these designs are not mere indicia of source.... On the contrary, to imitate is to compete in this type of situation." *Id.* at 344. The Court concluded: "the design being a functional feature of the china, we find it unnecessary to inquire into the adequacy of the showing made as to secondary meaning of the designs." *Id.*

In *Vuitton v. Young,* 644 F.2d 769, 773 (9th Cir.1981), the Ninth Circuit refined its definition of "functional". The Court essentially eliminated the focus on the importance of the design to the commercial suc-

cess of the product, and instead emphasized that a design is non-functional if it is "a mere arbitrary embellishment, a form of dress for the goods primarily adopted for the purposes of identification and individuality." In *Vuitton*, the Court ultimately concluded that the "LV" and flower-like symbols on the Vuitton luggage were intended to indicate the origin of the product. Defendant argued that the "LV" symbol had become aesthetically functional, i.e. that the design was an aesthetic requirement in order to compete in the market. The Court concluded, however, that the "LV" symbol was not "that aspect of [Vuitton's] products which satisfies its consumers' tastes for beauty." *Id.* at 774. Instead, the Court found that the insignia was a fanciful embellishment used to designate the Vuitton name.

In *Rogers v. Keene*, 778 F.2d 334, 343 (7th Cir.1985), the Seventh Circuit ruled that the term functional embraces the aesthetic: "Beauty is function." The Court then explained:

> the jury has to determine whether the feature for which trademark protection is sought is something that other producers of the product in question would have to have a part of the product in order to be able to compete effectively in the market—in other words, in order to give consumers the benefits of a competitive market—or whether it is the kind of merely incidental feature which gives the brand some individual distinction but which producers of competing brands can readily do without. A feature can be functional not only because it helps the product achieve the objective for which the product would be valued by a person indifferent to matters of taste, charm, elegance, and beauty, but also because it makes the product more pleasing to people not indifferent to such things. But the fact that people like the feature does not by itself prevent the manufacturer from being able to use it as his trademark. He is prevented only if the feature is functional, as defined above, that is, only if without it other producers of

the product could not compete effectively.

*Id.* at 346.

In the Second Circuit, "functional" symbols are those that are "essential to a product's use as opposed to those which merely identify it". *LeSportsac v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985) (*citing Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 330 (2d Cir.1983)). The Court explained:

> In deciding the question of functionality at trial, the factfinder will be faced with answering the following: Are consumers likely to purchase [plaintiff's] bag rather than that of a competitor principally because they find [plaintiff's] particular combination of design features aesthetically pleasing, or will they buy principally because the product features serve to identify or distinguish the goods as genuine [plaintiff] product? *See Vibrant Sales, Inc. [v. New Body Boutique Inc.]*, *supra*, 652 F.2d [299] at 303–04 [ (2nd Cir.1981) ]; *Vuitton et fils, supra*, 644 F.2d at 776.

*LeSportsac, supra* at 78.[2]

In the case at bar, the "Baroque" curls and flowers are not "arbitrary embellishments" adopted to identify plaintiff's product. Instead, all the "Baroque" style silverware use essentially the same scrolls and flowers as a way to compete in the free market. The "Baroque" style is a line of silverware which many manufacturers produce. Just like the patterns on the chinaware in *Pagliero*, the "Grande Baroque" design is a functional feature of "Baroque" style silverware.

Wallace may well have developed secondary meaning in the market of "Baroque"-styled silverware. In fact, I assume for purposes of this motion that anyone that sees, for instance, five lines of Baroque silverware will single out the Wallace line as being the "classiest" or the most handsome looking and will immediately exclaim "Oh! That's the Wallace line. They make the finest looking 'Baroque' forks!" That

---

**2.** In *LeSportsac,* the Second Circuit cited and followed the Ninth Circuit's decision in *Pagliero,* *supra,* as modified by *Vuitton, supra.* 754 F.2d at 78.

is secondary meaning. However, that does not mean that plaintiff's design is subject to protection. The "Baroque" curls, roots and flowers are not "mere indicia of source." Instead, they are requirements to compete in the silverware market. This is a classic example of the proposition that "to imitate is to compete." *Pagliero, supra*, at 344. The designs are aesthetically functional.

Accordingly, I conclude that plaintiff does not have a trade dress subject to the protection of the Lanham Act. Plaintiff's application for a temporary restraining order is denied. For comparable reasons, I decline to order expedited discovery or set the case down for a hearing on a preliminary injunction. The legal principles which bar a temporary restraining order are equally fatal to plaintiff's motion for a preliminary injunction. In these circumstances, I also deny plaintiff's motion for a preliminary injunction.

It is SO ORDERED.