Tassy BRAND, d. b. a. Bodyguard

v.

NCC CORPORATION, Through ITS DIVISION NATIONAL TOLL FREE MARKETING.

Civ. A. No. 81–1176.

United States District Court, E. D. Pennsylvania.

June 2, 1982.

Stanley H. Cohen, Philadelphia, Pa., for plaintiff.

J. Rodman Steele, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

SHAPIRO, District Judge.

This is an action for trademark infringement by plaintiff Tassy Brand ("Tassy") against defendant NCC Corporation ("NCC"). Subject matter jurisdiction exists pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. Before the court on April 14, 1982 were NCC's motion to set aside a default judgment, the motion of counsel for NCC for permission to withdraw, and Tassy's prayer for damages. For the reasons set forth below, the motions were denied on April 14, 1982 and judgment was entered on April 22, 1982 in favor of Tassy and against NCC in the amount of $146,635.47.

I. NCC's Motion to Set Aside Default Judgment

Tassy commenced this suit on March 26, 1981. The complaint and summons were served that day. NCC failed to plead or respond to the complaint and a default judgment was entered against NCC on June 17, 1981. A hearing on the issue of Tassy's damages was ordered for October 9, 1981. NCC failed to appear. A new hearing date, December 18, 1981, was ordered but a monetary judgment in the amount of $6,000.00 was entered against NCC for contempt of certain of the court's prior orders.

NCC filed this motion on December 9, 1981, but it was not decided because the parties appeared to have settled the controversy in principle on December 18, 1981. However, no settlement agreement was executed for failure to agree on settlement terms; therefore, NCC's motion to set aside the default is still pending.

█ It is clear that a standard of liberality applies to an action on a motion to set aside a default judgment. *Medunic v. Lederer*, 533 F.2d 891 (3d Cir. 1976). Doubts should be resolved in favor of the movant. *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3d Cir. 1951). Negligence in the form of failure to plead timely to a complaint cannot itself sustain the denial of such a motion without consideration of:

... whether prejudice would accrue to the plaintiff if the motion were granted, and whether a meritorious defense has been presented in support of the set aside motion.

*Medunic, supra,* at 893.

█ However, this case differs from *Medunic.* In *Medunic,* the negligence to which the court referred was the misfiling of plaintiff's complaint by the defendant's insurance carrier. We find in this case that NCC *intentionally* ignored Tassy's complaint.

NCC pleads its strategic decision not to answer was for lack of funds and that this constitutes justifiable neglect. Yet, NCC's retention of counsel and its subsequent actions discredit this excuse. It was NCC's *counsel* who contacted Tassy on December 31, 1979 to complain of a possible infringement of NCC's mark. It was NCC's counsel who wrote Tassy on April 2, 1980 that he had been in communication with his client about this trademark controversy. A repre-

sentative of NCC's counsel telephoned counsel for Tassy on August 1, 1980. On August 14, 1981, five months after this suit commenced, counsel for NCC wrote Tassy concerning the possible resolution of their conflict.[1] NCC was clearly represented by counsel at the time of this Court's order dated August 25, 1981 which set daily penalties for certain proscribed activities. Nonetheless, this Order was simply ignored.

On September 25, 1981 and September 28, 1981, NCC filed carefully worded answers *pro se* to Tassy's interrogatories. On October 15, 1981, the Court wrote to NCC's counsel and stated that as a corporation could not appear *pro se, Simbraw, Inc. v. United States*, 367 F.2d 373 (3d Cir. 1966), the appearance of its attorney was necessary. On November 23, 1981, NCC again filed *pro se* answers to Tassy's third set of interrogatories.[2] Counsel finally entered an appearance in this case on December 9, 1981 with the filing of this motion prior to a settlement conference.

Fed.R.Civ.P. 55(c) provides that a default judgment may be set aside in accordance with Fed.R.Civ.P. 60(b). But there has been no excusable neglect within the meaning of Fed.R.Civ.P. 60(b)(1) as exemplified by *Medunic*. Nor is this an attorney's inexcusable neglect which ought not prejudice the client, Fed.R.Civ.P. 60(b)(6); *see Boughner v. Secretary of H. E. W.*, 572 F.2d 976 (3d Cir. 1978), for this was not neglect at all. This was an intentional, strategic decision by a California corporation to ignore this action and the Court's orders and to engage counsel to negotiate settlement but not to litigate. *See* Section II, *infra*. Having chosen this manner of proceeding, the client also chooses the consequences. *See Residential Reroofing Union Local 30–B v. Mezicco*, 55 F.R.D. 516 (E.D.Pa.1972).

In the alternative, we find that NCC offered no meritorious defenses to justify vacating the default judgment.

■ NCC claims Tassy failed to join an indispensable party; its division, National Toll Free Marketing ("NTFM"), was separately incorporated and licensed to use the mark on July 1, 1980.

NCC also claims use of the mark was discontinued July 1, 1980. Assuming *arguendo* that the corporate veil of NTFM would not be pierced, this is no defense to NCC's use of the mark before July 1, 1980. Tassy did not seek to prove damages beyond that date. *See* Section III, *infra*.

■ NCC also claims its use was concurrent. 15 U.S.C. § 1052(d) permits *registration* of a trademark lawfully used prior to another mark's filing or registration even if it resembles the mark previously filed or registered if confusion is not likely to result from such concurrent use *under conditions and limitations as to the mode or place of use of the marks*. This provision is no defense to a claim of trademark infringement by a subsequent user of an identical mark for an identical product through identical media, (magazines), in an identical market area (the nation). *See generally Weiner King, Inc. v. Weiner King Corp.*, 615 F.2d 512 (CCPA 1980).

II. Motion for Permission to Withdraw

■ Counsel for NCC entered an appearance on December 9, 1981, six months after the default judgment was entered. Counsel participated in several settlement conferences and conference calls. A hearing on damages was scheduled for April 14, 1982 after two prior continuances. At the settlement conference prior to the hearing that morning, counsel informed the court that should settlement efforts fail, his client had instructed him to cease representation. This motion, subsequently submitted, was not accompanied by an affidavit or a written notice of discharge. Minutes before counsel's motion, he had contacted the de-

---

1. This chronology of events is evident from the letters attached to Plaintiff's Memorandum in Opposition to Defendant's Motion to set Aside the Default Judgment. The authenticity of these letters is deemed to be conceded by NCC's silence in the motion papers, at conference and during argument.

2. This discovery was directed solely to the issue of damages.

fendant by telephone regarding settlement offers by the plaintiff.

 NCC cannot have it both ways. It cannot have counsel appear (and move to vacate judgment) but then limit his authority to settlement negotiation. Leave of court for withdrawal, absent the simultaneous appearance of substitute counsel, is within the court's discretion. Local Rule 18(c). For the reasons noted above, the court, in its discretion, denied leave.[3]

## III. Damages

The Lanham Act provides as follows: When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117.

 Tassy presented no proof of actual damages. Absent such proof, no award based upon this category of relief can be made. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978); *Caesar's World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269 (3d Cir. 1975). In addition, there was no proof of costs of the action.

 NCC has admitted in answers to interrogatories that its revenues from sales were:

| | |
|---|---|
| 7/01/78–6/30/79 | $450,869.00 |
| 7/01/79–6/30/80 | 351,897.00 |
| | $802,766.00 |

NCC chose not to offer in evidence any costs or other deductions from these sales figures.

We also know that Tassy notified NCC, by letter dated January 24, 1980, that it had filed its mark for registration and its mark enjoyed prior use; Plaintiff's Memorandum in Opposition to Defendant's Motion to Set Aside Default Judgment, Exhibit B. We have assumed that NCC's use was innocent prior to that date. We find it just to award Tassy the sum of NCC's sales from February through June, 1980 as damages. A straight line calculation results in an award of $146,635.47.

 Finally, Tassy seeks attorney fees. The Act provides for an award of "reasonable attorney fees" in "exceptional circumstances." 15 U.S.C. § 1117. While the statute fails to define "exceptional," it has been interpreted to require a finding of intentionality akin to malice or fraud. *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652 (7th Cir. 1981); *Jones Apparel Group, Inc. v. Steinman*, 466 F.Supp. 560 (E.D.Pa. 1979); *see Donsco, supra.* In this case of judgment by default, we do not make such a finding and we decline to award attorney fees.

---

**3.** Our criticism of NCC's behavior is *not* directed to local counsel who performed admirably under the circumstances at settlement conferences and at the damages hearing.