**TRUSTEES OF LOCAL UNION NO. 727 PENSION FUND, Trustees of Teamsters Local No. 727 Health and Welfare Fund, and Trustees of Teamsters Local No. 727 Legal Assistance Trust Fund, Plaintiffs,**

v.

**PERFECT PARKING, INC., and Milton Kaplan and Marshall Gordon, in their individual capacities, Defendants.**

No. 88 C 0890.

United States District Court, N.D. Illinois, E.D.

March 31, 1989.

**50**

Joseph M. Burns, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiffs.

Edward A. Berman, P.C., Antonette C. Hue–Laitsch, Berman, Roberts & Kelly, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

### ORDER

NORGLE, District Judge.

This matter comes before the court on the motion of defendants, Perfect Parking, Inc. ("Perfect Parking"), Milton Kaplan ("Kaplan") and Marshall Gordon ("Gordon"), pursuant to Fed.R.Civ.P. 60(b), to vacate the default judgment, entered on July 18, 1988, against them and in favor of plaintiffs, Trustees of Local Union No. 727 Pension Fund, Trustees of Teamsters Local No. 727 Health and Welfare Fund, and Trustees of Teamsters Local No. 727 Legal Assistance Fund. For the following reasons, the motion is denied.

### FACTS

On January 29, 1988, after several months of unsuccessful negotiations, the plaintiffs filed this action to collect delinquent employer contributions to three employee benefit plans. Plaintiffs attempted service by certified mail, pursuant to Fed. R.Civ.P. 4(c)(2)(c)(ii), addressed to the business address indicated in the plan records and the records of the Secretary of State.

Service by mail was unsuccessful, as the summons and complaints were returned undelivered. Plaintiffs were also unsuccessful at locating defendants personally or contacting them by phone. However, defendants were aware that plaintiffs were attempting to contact them, as counsel for plaintiffs received a call from Gordon and a meeting was arranged.

On May 5, 1988, counsel for plaintiffs met with Gordon and Kaplan. Counsel for plaintiffs, in his detailed affidavit, asserts that at that meeting he served copies of the summons and complaint, which had been previously returned undelivered, to each individual defendant and to Kaplan, in his capacity as registered agent of Perfect Parking. Counsel for plaintiffs further asserts that he discussed with Gordon and Kaplan the delinquency owing to the plans, informed them of a scheduled status hearing in the pending litigation and, immediately after the meeting, executed the return of service on each summons. Gordon and Kaplan, on the other hand, deny that they were served with summons and complaint and claim that they do not even recall discussing the lawsuit with counsel for plaintiffs on May 5, 1988. They do recall discussions centering around a determination of delinquency to the plans. According to the docket sheet for this case, on May 9, 1988, executed returns of summons as to Perfect Parking, Gordon, and Kaplan were filed with the court. All reflected service on May 5, 1988.

On May 25, 1988, the court held a status hearing. Only counsel for plaintiffs appeared, and the matter was continued until June 30, 1988. On June 24, 1988, counsel for plaintiffs spoke with Gordon over the telephone, during which time counsel for plaintiffs asserts that they discussed the lawsuit and that he advised Gordon specifically of the June 30, 1988 court date. Counsel for plaintiffs also confirmed with Gordon the address at which defendants received mail—P.O. Box 14058, Chicago, IL 60614. Gordon denies that he was informed of the pending lawsuit during the June 24, 1988 phone call.

Counsel for plaintiff sent a letter to Gordon, dated June 24, 1988, (the "June 24th letter"), confirming their conversation of that day and reminding Gordon of the June 30, 1988 court date. Specifically, counsel for plaintiffs, in the context of a proposed consent decree, wrote "I will contact you before our court date of June 30 to work out the details of that decree." (underlining supplied). The letter was addressed to Gordon at P.O. Box 14058, Chicago, Illinois 60614. Gordon acknowledges receiving the June 24th letter, but states that it "did not, in ... [his] ... mind, inform ... [him] ... of an existing pending lawsuit."

Defendants did not appear at the June 30, 1988 status hearing and the court, setting July 15, 1988 as the next status date, indicated that it would entertain a motion for default.

On July 8, 1988, counsel for plaintiff mailed a notice of motion for default judgment to defendants. Gordon denies receiving notice of the motion for default, despite the fact that the notice was mailed to the address provided by Gordon, the same address to which the June 24th letter was sent to and received at by Gordon.

On July 15, 1988, the default motion was presented, the defendants failed to appear and a default judgment was entered. Eventually, plaintiffs began proceedings to enforce their judgment, personally serving defendants with citations to discover assets on October 10, 1988, and serving both North Bank and Manufacturers Bank with non-wage garnishment summons. The citation to discover assets was noticed for October 21, 1988. On October 20, 1988, counsel for defendants called counsel for plaintiffs to propose an installment payment plan and request that the citation proceedings be continued until December 16, 1988. Plaintiffs agreed to rescheduling the citation examination. On October 28, 1988, an account at Manufacturers Bank was garnished in the amount of $26,228.89 in partial satisfaction of the judgment. Counsel for plaintiffs asserts, and defen-

dants do not contest, that defendants failed to appear for the citation proceedings on December 16, 1988. Defendants filed this motion on December 23, 1988.

## DISCUSSION

 Defendants move pursuant to Rule 60(b) for relief from final judgment on the alternate grounds that (1) the judgment is void as defendants allegedly were never served with summons and complaint, (2) that defendants' conduct "constitutes mistake, inadvertence, surprise or excusable neglect ..." and, with respect to the individual defendants, that relief is justified for other reasons. *See* Fed.R.Civ.P. 60(b)(1), (4), (6).[1] Motions under Rule 60 are addressed to the sound discretion of the court. However, where the basis for relief is that the judgment is void, and it is so proven to be, the court lacks discretion and must grant relief. *See Textile Banking Co., Inc. v. Rentschler*, 657 F.2d 844, 850 (7th Cir.1981). Moreover, Rule 60(b)'s requirement that motions be made within a reasonable time does not apply to void judgments, which may be challenged at any time. *See Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir.1969).

### A. *The Judgment is not Void for Lack of Proper Venue*

 If defendants were not served with summons and complaint, the court would never have had jurisdiction over their persons and its judgment would be void. Thus, the court must determine whether defendants were properly served. Rule 4(c)(2)(A) provides that "[a] summons and complaint shall, ..., be served by any person who is not a party and is not less than 18 years of age." Based upon the plain language of Rule 4, service of summons and complaint by an attorney for the plaintiff has been held to be proper service. *See C.F.T.C. v. American Metal Exchange Corp.*, 693 F.Supp. 168, 186 (D.N.J.1988);

---

1. Defendants may have had other arguments to defeat service, such as the delay between filing and service, *see* Fed.R.Civ.P. 4(j), or to claim excusable neglect or lack of proper notice, such as the ability of Gordon to act on behalf of Kaplan. However, these and all other jurisdictional arguments, not having been made, are waived.

*Jugolinija v. Blue Heaven Mills*, 115 F.R.D. 13, 15 (S.D. Ga.1986). The court agrees with this interpretation of Rule 4. While service by counsel for plaintiff may not be the most preferable method, service by counsel is proper.

■ Counsel for plaintiffs has executed and filed the return of service for each summons and complaint. In interpreting the import of a signed return of service, before amendment of Rule 4 to allow service by other than a United States Marshall, the signed return of service was found to be prima facie evidence of valid service. *See Taft*, 407 F.2d at 808–09. In light of the amendment of Rule 4, the court sees no reason why a return of service executed by one other than a United States Marshall should be given any less weight. *See, e.g., In re Chase & Sanborn Corp.*, 58 B.R. 721, 722 (Bankr.S.D.Fla.1986). Therefore, the returns of service executed by counsel for plaintiffs are prima facie evidence of valid service. As such, they import a verity "which can only be overcome by strong and convincing evidence." *See Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir.1955).

■ Defendants' evidence falls short of the "strong and convincing" standard. Affidavits submitted by defendants which merely deny service are not sufficient. *See Jones v. Jones*, 217 F.2d 239, 242 (7th Cir. 1954); *see also Ruddies v. Auburn Spark Plug Co.*, 261 F.Supp. 648, 657 (S.D.N.Y. 1966) (return of service itself established proper officer for service on corporation was not served); *Blume v. U.S.*, 40 B.R. 551, 553 (D.S.D.1984) (sheriff himself testified return of service was incorrect). Defendants have failed to set forth circumstances in their affidavits which would call into question the issue of service. It is, as counsel for plaintiffs asserts, difficult to believe that he would have passed up the "golden opportunity" to serve defendants. Holding that an affidavit merely denying service, without more, is sufficient, would be totally contrary to the presumption that a return of service is prima facie evidence of service, and would thereby render the return of service all but meaningless.

Insufficient as the defendants' affidavits and pleadings are, their weight is further reduced by their implausible rendition of events. Defendants allege that counsel for the plaintiffs never informed Gordon of the June 30th status date during the telephone call on June 24th. This is difficult to believe. Counsel for plaintiffs had been unsuccessful at reaching an out of court settlement, so it was in his interest to obtain defendants' presence at the status, so as to take advantage of the judicial process. The sum of defendants' assertions are that counsel for plaintiff lulled them into a sense of security by continuing negotiations, while purposely concealing the pending litigation from them. This conclusion is not consistent with counsel for plaintiffs' behavior in this matter, as is clearly evident by his sending of the June 24 letter. This letter, of which Gordon acknowledges receipt, stated that counsel for plaintiffs "will contact ... [Gordon] ... before our court date of June 30 ..." If counsel for plaintiff wished to conceal the litigation from defendants, he never would have sent the June 24th letter.

The credibility of defendants' assertion that they were never served during the May 5, 1988 meeting with counsel for plaintiffs is further diminished by Gordon's assertion that the June 24th letter "did not in ... [his] ... mind inform ... [him] of an existing pending lawsuit." That the June 24th letter could be interpreted so as not to inform the defendants of an "existing pending lawsuit" is so incredible as to cause the court to question defendants' other assertions. The court also notes the defendants' lack of candor to the court in failing to mention the June 24th letter in their motion for default. They only proffered their lame explanation of the letter in their reply when forced to do so by plaintiff's response.

Finally, the defendants would have the court believe that they did not receive the notice of default motion, despite that it was mailed to the address at which Gordon stated the defendants received mail and where they had received the June 24th letter. Defendants' implication of misbehavior on the

part of plaintiffs' counsel has been addressed and dismissed. The court is cognizant that on occasion the mails may be unreliable. If defendants urged only a single misadventure, the court might be receptive. But this, in conjunction with the other events of this case the defendants relate, is too much.

The court notes two additional inconsistencies or ambiguities in defendants' pleadings and affidavits on this point. First, in their motion at ¶ 6, the defendants, after denying service, state that they "were without knowledge of the legal import of any other papers subsequently served until a citation to discover assets was served ..." This statement impliedly acknowledges that other documents were in fact served upon them. According to the docket sheet for this matter, the only other paper likely to have been served upon the defendants during that period was the notice of motion for default judgment, which they denied receiving. Second, defendants have failed to explain or even address their failure to appear at the rescheduled citation to discover assets on December 16, 1988.

By way of clarification, the foregoing discussion was not for the purpose of demonstrating that the defendants had knowledge of the litigation, for if service was improper, defendants' knowledge of the litigation would not cure this defect. *See Bennett v. Circus U.S.A.*, 108 F.R.D. 142, 148 (N.D. Ind.1985). Rather, the discussion of the events recited in defendants' pleadings and affidavits was for the purpose of determining the credibility of the defendants' averments which necessarily impacts upon the weight the court gives to defendants' denial of service. The court concludes that defendants have failed to carry their heavy burden of overcoming, by "strong and convincing evidence," the prima facie evidence of valid service created by the return of service executed under penalty of perjury by counsel for plaintiffs. For the court to conclude otherwise would be to encourage disregard of the legal process.

## B. *Defendants have Failed to Demonstrate Other Grounds Sufficient to Justify Relief under Rule 60*

A motion for relief based upon mistake, inadvertence, surprise or excusable neglect must, in addition to being made within a reasonable time, demonstrate both a meritorious defense and the lack of prejudice to the non-defaulting party in the event relief is granted. *See Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1511 (11th Cir. 1984); *Brand v. NCC Corp.*, 540 F.Supp. 562, 563 (E.D.Penn.1982). Thus, the court may dispatch with the individual defendants' assertion, under Rule 60(b)(6), of "the absence of individual liability" as a ground for relief. This is not the "extraordinary" circumstance necessary to qualify as an "other reason justifying relief," *see Ruddies*, 261 F.Supp. at 658, but rather is merely the meritorious defense claimed by the individual defendants. With respect to the corporate defendant, Perfect Parking, as no meritorious defense has been asserted on its behalf, the court need not inquire further and relief as to it is denied.

The court must determine whether there has been "mistake, inadvertence, surprise or excusable neglect" to justify relief. The defendants do not indicate upon which of the foregoing they seek to rely. Only "excusable neglect" could have any application and to it the court now turns its attention.

The inquiry into the existence of excusable neglect need only be brief. The court has already evaluated the defendants' pleadings and affidavits for the purpose of determining the validity of the judgment. The detailed pleading and affidavit submitted by counsel for the plaintiffs and the affidavits submitted by the individual defendants leave the court with the definite and firm conviction that defendants' conduct has not been excusable neglect, but rather has been grossly negligent or even willful. *See Brand*, 540 F.Supp. at 563–64.

Any further testimony defendants might have given at a hearing on this matter would have been to no avail, as it would have to have been such as to contradict

statements in or omissions from their own affidavits. Despite knowing of the delinquency owing to the plans, the defendants refused to accept service by certified mail, ignored personal service, ignored an unambiguous notice of a status hearing set by the court, claimed that they never received notice of a motion for default mailed to an address supplied by defendants and at which they had previously received mail, and failed to appear at a citation to discover assets. The court cannot ignore the cumulative impact of this behavior. *See Jack Gray Transport, Inc. v. Shaw*, 105 F.R.D. 485, 488–89 (N.D.Ill.1984) (cumulative effect of defendants' failure to answer, failure to respond to default motion and filing of Rule 60(b) motion only after service of citation to discover assets supports conclusion that conduct was willful). Moreover, unlike conduct of counsel which is not always imputed to a party, *see Jackson v. Beech*, 636 F.2d 831, 832 (D.C.Cir. 1980), the conduct was that of defendants themselves, who could not be other than aware of what was happening. *See Standard Newspapers, Inc. v. King*, 375 F.2d 115, 116 (2d Cir.1967).

The defendants' reaction to the June 24th letter, the most striking occurrence belying the defendants' assertion that relief is warranted, deserves emphasis. Defendants waited approximately six months after receipt of the June 24th letter before filing their Rule 60(b) motion. Generally, notice is good on receipt alone. Gordon goes further and admits actually reading the letter. Yet, defendants assert that their conduct is excusable because the letter did not in "... [Gordon's] mind, inform ... him of an existing pending lawsuit." The court will not employ a subjective standard in determining whether defendants' conduct was excusable. The June 24th letter, referring to "our court date of June 30" unambiguously informed defendants of an "existing pending lawsuit." No reasonable person could interpret it otherwise or fail to inquire further without delay.

Given this holding, the other prerequisites to Rule 60(b) relief need not be addressed. However, the court does hold, as alternative grounds, that even had defendants' conduct been excusable, their motion was not filed within a reasonable time, given the approximately six month time period between their receipt of the June 24th letter and the filing of this motion.

### CONCLUSION

The court is well aware of the strong policy favoring resolution of disputes on their merits. *See Jackson* 636 F.2d at 832. Yet, to grant relief under Rule 60(b) would be to reward defendants for their conduct. *See Morrisey v. Crabtree*, 143 F.Supp. 105, 106 (M.D.N.C.1956). The defendants have sought to delay the plaintiffs' right to a judicial resolution of this dispute by ignoring the judicial proceedings. *See McKenzie v. Wakulla County*, 89 F.R.D. 444, 445 (N.D. Fla.1981). They have done so at their peril. The motion for relief from judgment is denied as to all defendants.

IT IS SO ORDERED.